## CARRINGTON & CO. v. MANNING'S HEIRS.

1. A testator by his will directed as follows: "It is my will, that the interest which I have in a house and lot, in the town of Huntsville, with all my lots lying in the towns of Triana, and Florence, be sold, and the proceeds applied to the payment of legacies hereafter bequeathed, and the discharge of my debts. I hereby direct, and require my executors, hereinafter named, to keep my estate in the county of Marengo together, until all my debts and legacies are paid off and discharged, and out of the proceeds of my said estate in Marengo, to pay annually to my beloved wife, Sophia, one thousand dollars for her support," &c. By another clause in his will, the testator declared that his estate in Marengo should not be divided, until his debts, and the legacies were paid. Held, that the will did not create a trust by implication in favor of creditors, which would take a debt due by the deceased out of the statute of limitations, or prevent it from running, or prevent the bar of the statute of *non-claim*.

Error to the Chancery Court sitting at Huntsville. Before the Hon. D. G. Ligon, Chancellor.

THE bill was filed by the plaintiffs in error, who alledge, that they are creditors of B. M. Lowe, upon four several bonds of $6,000 each, and that one James Manning was a co-obligor, and surety upon said bonds. That judgments have been obtained against said Lowe on the bonds, and execution returned no property found. That Manning has departed this life, having on the 26th September, 1837, made his will duly attested, &c. which, among other clauses, contains the following:

"It is my will, that the interest which I have in a house and lot in the town of Huntsville, jointly with Thomas Bibb, Esq. of Limestone county, together with my lots lying in the towns of Triana and Florence, be sold, and the proceeds applied to the payment of legacies hereafter bequeathed, and the discharge of my debts. I hereby direct, and require my executors hereinafter named, to keep my estate in the county of Marengo, Alabama, together, until all my debts and lega-

cies are paid off and discharged, and out of the proceeds of
my said estate in Marengo county, to pay annually to my
beloved wife, Sophia, one thousand dollars, for her support
and maintenance during the time that said estate shall remain
undivided." The testator further expressed his intention,
that his estate in Marengo should not be divided, until all
his debts and the legacies given by the will were satisfied.
The testator died first March, 1841, his widow and all his
children surviving him, and B. M. Lowe and James Manning
qualified as his executors, and entered upon the execution of
their trust. That the wife of said Lowe was the daughter of
said Manning, and has also departed this life, leaving certain
children who are described.

It is admitted in the bill, that the bonds were not presented
to the executors for payment, being with the obligee in the
State of Connecticut; but that Lowe being the principal ob-
ligor in the bond, as well as one of the executors in the will,
knew of their existence, and that they were unpaid, and had
repeatedly by letter recognized them, but charges, and ex-
pressly relies upon the will of the testator, as having charged
his real estate, with the payment of all his debts, &c.

The chancellor dismissed the bill for want of equity,
which is the matter now assigned for error.

Hopkins and S. Parsons, for the plaintiffs in error, made
the following points:

Upon the death of the owner of real estate, the title vests
in his heirs at law, if he die intestate, or is transferred to his
devisee if he devised the estate. 4 Ala. Rep. 681, 682, 752;
5 Id. 503.

The executor or administrator acquires no right to, or in-
terest in, the estate, from the succession merely. Should the
estate be insolvent, and this fact become known to the per-
sonal representative, the legal effect of the event, and his
knowledge of it, makes it his duty to report the estate insol-
vent to the proper orphans' court, and apply for a license to
sell as much of the real estate as may be necessary to pay the
debts. 3 Ala. Rep. 61, 64; Clay's Dig. 191, § 1; 2 Peters's
Rep. 523.

The truth of the report of the representatives may be de-

nied by the heirs and devisees, and unless the truth of the report can be proved to the satisfaction of the orphans' court, the license will be denied.    2 Ala. Rep. 660, 662, 663.

If the license be granted, the title will remain in the heirs or devisees till the estate shall be sold, and the personal representative ordered to convey to the purchaser, and the title is in fact made.    5 Ala. Rep. 324, 503.

The personal representative cannot pay debts out of the proceeds of the sale according to his own discretion, but the proceeds must be administered by him in conformity to the judgment of the orphans' court.    That court determines what debts are valid, and to no others can any part of the proceeds be applied,    Clay's Dig. 194, § 12.

When a personal representative acquires from the sources which have been mentioned, a right to apply for a license to sell the real estate, it becomes his duty to exercise it as a trustee for the creditors, and his report that the estate is insolvent, and application for a license to sell, are the commencement of a suit on his part for the use of the creditors, against the heirs or devisees.    2 Ala. Rep. 663.

The 9th section, on page 598 of Clay's Digest, recognizes the right of a testator to charge by his will the payment of his debts upon his real estate, and this section was enacted at the same time the first section was, to be found in Clay's Dig. 191, by which the lands of a testator or intestate are charged with such parts of his debts as his personal property may be insufficient to pay.

The right to charge by will the payment of debts upon real estate, is recognized also by the statute, which requires such of the executors as undertake the execution of a will, which directs or devises land to be sold, to make sale thereof, if no person be appointed by the will for the purpose, or the person appointed shall refuse to perform the trust, or die before he made the sale.    Clay's Dig. 598, § 14.    The act does not discriminate between sales devised to pay legacies or debts, or for any other purpose.

This power of a testator over his real estate, is recognized also by the statute which gave authority to the judges of the county courts to authorize an executor or administrator to keep the personal property of the deceased together for any

time not exceeding ten years. The 34th section of this act declares that the authority to be conferred under it upon a personal representative, shall not conflict nor defeat the provisions of the last will of the testator. Clay's Dig. 198, § 30, 31, 34.

All these statutes were enacted before the death of Manning, the testator in this case.

The debts and legacies of the testator are by the 4th clause of the will, expressly charged upon his real estate in the town of Huntsville, Triana and Florence. The lots of the testator in these towns, he directed by his will to be sold, and as no trustee was appointed by the will to make the sale, the executors who undertook the execution of the will, were bound to make the sale. Clay's Dig. 598, § 14.

By the 5th clause of the will, the executors were required to keep the estate of the testator in Marengo county together until the debts and legacies of the testator should be paid. Such authority to the executors, the statute law authorizes, and a county court could not in such a case act under the statute referred to in Clay's Dig. 198, § 30, because any permission it might grant to keep that estate together, would be embraced by the authority given by the will, and if permission to keep the estate together should be upon any terms different from the grant of the same authority by the will, such permission would conflict with the provisions of the will, and is prohibited by the 34th section of the same statute. The validity of such a direction and authority in a will, to keep an estate together, for the express or implied purpose of paying debts and legacies, is recognized by another statute of the State. Clay's Dig. 228, § 39; and also by a judgment of this court. Bibb v. McKinley, Hopkins, and others, 9 Porter's Rep. 648. The effect of this direction to the executors is, at least, a devise to them of the rents and profits of the land in Marengo, and vests in them the legal, as well as the beneficial interest therein. 2 Jarman on Wills, 533, II. and the authorities there cited. The only object in keeping the estate together was to enable the executors to pay the debts and legacies, and the annuity to the widow of the testator, as the fifth clause of the will directs. The executors are liable to the creditors in equity as trustees. 1

Howard's U. S. 150; 33 Com. Law Rep. 55; 10 Peters, 562, 563, 564, 532; 34 Com. Law Rep. 187. Such a devise or power authorizes the executors to sell the real estate to pay the debts and legacies, although no time is specified in the will for the payment of the debts and legacies. 2 Jarman on Wills, 535, 536, marginal pages, and the authorities there cited; 6 Johns. Ch. Rep. 70, 74; 2 Vernon, 26; 9 Pet. 466 to 477; 3 Cond. Eng. Ch. Rep. 427, 428, and note A, and 429; 14 Eng. Ch. Rep. 504, note 1; 1 Vernon, 45.

The 6th clause of the will creates an implied charge upon the real estate at least in Marengo, because the intention of the testator is clearly shown, that all his debts and legacies shall be paid, before the estate in Marengo shall be divided among his widow and six children, to whom it is devised by the clause last mentioned, and directed to be divided as soon as all the debts and legacies of the testator shall be paid off and satisfied. 2 Jarman on Wills, 516, 517, and 519, margin; Darrington, and others, v. Borland, 3 Porter, 10, 13; Graves v. Graves, 11 Eng. Ch. Rep. 310; Taylor v. Taylor, 9 Eng. Ch. Rep. 252; 3 Cond. Eng. Ch. Rep. 427, 428, note A, 429; 9 Peters, 461, 467 to 477; 3 Vesey, 738; 3 P. Wms. 96.

The charge created by the 6th clause of the will, authorizes a sale of the land to pay debts and legacies. 3 Cond. Eng. Ch. Rep. 427, 428, note A, 429; 2 Vernon, 26; 9 Pet. 467 to 477; 1 Vernon, 45; 14 Eng. Ch. Rep. 504, note 1; 8 Peters, 143; 1 Howard U. S. 150.

If the testator had intended that his debts should be paid out of the annual proceeds of the Marengo estate, yet as they have not been paid, although the bill states that the receipts by the executors as trustees had been more than sufficient to discharge the debts; equity will decree a sale of the Marengo land to pay the debts. 14 Eng. Ch. Rep. 504, note 1; Evans v. Tweedy, 1 Beavan, 55.

The devisees of the charged estate take it subject to the payment of debts and legacies, and are trustees for the payment of the charge, as well as the executors. 3 Cond. Eng. Ch. Rep. 427, 428, note A, 429; 9 Peters, 466 to 477; 3 Peters, 99, 119.

If it be true, (which is denied where executors, trustees,

devisees and creditors, assenting to the charge, are the only parties,) that a testator cannot charge his personalty with his debts, an attempt to do so, by the same will in which he makes a charge of them on his real estate, would not impair the validity of the charge on his real estate, which he had a right to make. 14 Eng. Ch. Rep. 504, note 1; Evans v. Tweedy, 1 Beavan, 55; 4 Clarke & Finnelly's Rep. 397; 6 Mass. Rep. 151, 153, cited for defendants; 1 Vernon, 45; 3 Cond. Eng. Ch. Rep. 427, 428, note A, 429.

A charge by will upon real estate creates a lien upon it. 2 Jarman on Wills, 511. Should a devisee sell land devised with a charge upon it, the purchaser in taking the title, must find the source of it in the will which created the charge, and would be charged with at least constructive notice of the trust. The purchase money of lands charged by will must therefore go into the hands of the trustee for the payment of the debts, or the lands may be pursued in the hands of the vendee, who paid the purchase money to the devisee. 7 Paige's Ch. Rep. 421.

It is a mere contingency whether the personal representative may become interested in the real estate, and entitled to a cause of action for the use of the creditors against the heirs or devisees, and his contingent right creates no lien upon the real estate. 2 Ala. Rep. 662, 663; 2 Jarman on Wills, 511.

Under the English statute of 3 and 4 William IV, real estate not charged by will is administered in equity for the payment of the debts of the deceased, upon a suit brought against the heirs or devisees; but this statutory charge creates no lien upon the real estate, and the doctrine allowing charges by wills upon real estate, and confining the remedy on such charges to courts of equity is the same since, that it was before the enactment of the act of parliament. 2 Jarman on Wills, 510, 511; 8 Peters, 143; 1 Howard U. S. 150.

The charge by will creates a lien which extends from the testator's death till it produces enough to satisfy the debts or exhaust the charged estate, and thus includes a time in every case, during which the personal representative has no personal interest in the estate, from the death of the testator till the personal representative may obtain a license to sell real estate to pay debts. The charge by will gives the creditors

a certain interest protected by a lien, while the charge under the statute is contingent merely, unaccompanied by any lien. The charge in the will therefore secures to the creditors what the statute did not provide for their benefit, a lien upon the real estate from the death of the testator. The remedy upon this charge and lien is in equity only, and another benefit secured for the creditors by the charge in the will, is the exemption of their claims in equity against the trust fund from the general statute of limitations and the statute of nonclaim.

But in this case the bill states the personal property is much more than sufficient for the payment of all the debts of the testator, the will therefore created a charge upon real estate which was not liable to creditors under the statute law, and could not become so.

The benefit of the trust created by the will cannot be obtained at law against the executors, but the suit to secure it must be in equity against the trustees. The trust therefore is a technical one, of which a court of chancery only has jurisdiction. 7 Johns. Ch. Rep. 98, 111, 114, 116; 10 Vesey, 453; 2 P. Wms. 144; 10 Peters, 180; 1 Howard U. S. 150.

As the debts due to the complainant were not barred at the death of the testator, by the statute of limitations, the statute did not run against them in equity afterwards. The failure of the trustees to pay the debts was a breach of their duty, and their neglect of their duty cannot be a foundation for the bar of the statute. 1 Sch. & Lef. Rep. 107, 110; 14 Eng. Ch. Rep. 503, note 1; 2 Vesey & Beam's Rep. 297, 281; 2 Hen. & Munf. Rep. 130, 136; 6 Johns. Chanc. Rep. 294; 4 Clarke & Finnelly, 397; 4 Cond. Eng. Ch. Rep. 414, 415, 417, 418; 3 Id. 742.

The statute of non-claim is a statute of limitations; it extinguishes the legal remedy only as other statutes of limitations do, leaving the debt in existence, and any equitable remedy there may be, unaffected by the loss of the legal remedy. 1 Ala. Rep. 710, 740, 741; 2 Id. 331. The testator had as perfect a right to create a trust by his will upon his real estate, at least for the payment of his debts, as he had to provide while he lived, a security by mortgage on his lands

78

for any of his debts. If a mortgage had been made by him, his right to execute it would have been exercised before he had any heirs, devisees or legatees. He made the charge by his will on his real estate while he lived, and when he had no heirs, devisees or legatees. The devisees and executors who claim the real estate under the will, can take it only subject to the trust with which the testator clothed it. The general statute of limitation, and the statute of non-claim, are for the benefit of the heirs or devisees, as the case may be. Neither can run against the trust, as the real estate, incumbered with the trust in favor of creditors, is what the testator devised to be divided among the devisees as soon as his debts should be paid. The contrary doctrine might give the devisees the whole interest in the real estate without the payment of the debts. The will is a law to the executors, the heirs, devisees and legatees, and the testator intended the first benefit for his creditors; that they should be fully satisfied, before his devisees should take any part of the Marengo estate. 9 Peters, 475; 3 Id. 119; 3 Porter's Rep. 33; 9 Id. 648. The equitable remedy must be sought not against the executors as such, but as trustees, and against all others who are trustees.

If the statute of non-claim intended for the protection of the legal rights of heirs, or devisees and legatees, could be made by construction, to apply to the equitable remedy for the debts of creditors, which the will intended should be fully paid, before the devisees should take any interest in the estate, upon which the charge was made, there was in this case what must be regarded as equivalent in effect to actual presentment of the notes to the executors. Presentment to one of two executors is sufficient at law. 4 Ala. Rep. 503. The object of a presentment is to inform the executors, or one of them, of the amount of the debt and the evidence of it. Lowe, one of the executors, had this knowledge. He was one of the makers, and knew how much was unpaid. Knowledge of an unregistered deed, which the law requires to be recorded, has the same effect as if the deed had been registered according to law.

It was decided in the case of Darrington, and others, v. Borland, 3 Porter's Rep. 10, that real estate could be charged

by a will with the payment of debts, and that a court of equity would decree the estate to be sold in execution of the trust, if the same had not been sold previously by the authority of an orphans' court. No such sale in this case has or can be made, by an order of an orphans' court, as the personal property of the testator was much more than sufficient to pay his debts. As the construction of our statute law upon the main point in that case was made so long ago, there are the same reasons for adhering to it, that were relied upon by this court in the case in 9 Porter's Rep. 572, 573, for abiding by a previous judgment of the court upon the same question. 13 Com. Law Rep. 412, 416; 7 Ala. Rep. 386. The implied exemption of the personal property specifically bequeathed by this will, is an implied charge of the debts upon the land. 1 Howard, 150.

As the will is the law of the executors, heirs, devisees and legatees, it is valid against them, although it exempts some or all of the personal property from liability for the debts of the testator, and charges them upon his real estate. 3 Por. Rep. 10; 9 Peters, 475; 3 Id. 119. Upon the same principle, where personal as well as real estate are included in the same trust, created by a will for the payment of debts, it is valid in equity, if the same will exempt other personalty from payment of debts, where it will be executed as to the personal property against the executors, heirs, devisees and legatees. Creditors only acting through the executors, cannot disturb it under any circumstances. The bill in this case is a creditor's bill, and it does not appear that any creditor has objected to the part of the trust of the Marengo estate, which consists of personal property. 2 Jarman on Wills, 548, at the bottom of the text on this page; 5 Metcalfe's Rep. 282; 1 Vesey, jr. 444; 10 Peters, 562.

The executors might in such a case as the latter, if there were creditors who claimed satisfaction of their debts out of all the personalty, against him as executor, file his bill in equity, that equity might be done to all. 9 Peters, 475. The creditors, in such a case, may file a bill against the executors as trustees, if the latter will not voluntarily perform such a part, as they may do. 1 How. U. S. Rep. 150. The statute of limitations is held to run against debts although

there may be a bequest of the personalty for the payment of them, upon the ground that such a trust does not vary from the legal trust of the personal property, which the law creates and devolves upon the executors, whose duties and liabilities are not altered by the mere fact that the testator has in express terms declared his personalty subject to the payment of his debts, as the law makes it liable in the same manner and to the same extent. 4 Clarke & Finnelly, 397. But in this case the testator bequeathed, in effect, as specific legacies, debts due to him from his children. He made specific bequests of slaves to some of his children, and similar bequests of slaves and other personalty to his widow, and charged his debts and general legacies upon his lots in the town of Huntsville, Triana, and Florence, and his Marengo estate. These bequests and devises are binding upon his executors, heirs, devisees and legatees, and as the exemption of the debts due from the children, from the claims of the executors, and a bequest of the slaves to his widow and some of his children, takes all these parts of the personalty out of the trust created by law upon the executors, they make an equitable trust against the executors, as trustees of the personal property included in the trust created by the will of the Marengo estate. But for this equitable trust, the debts due from the children would be the first portion of the personalty applicable to the payment of debts. If there were a legal trust against the executors, as such, on the personalty included in the Marengo estate, the whole personal property would be liable at law to the creditors, and the executors could not protect the debts from the creditors, due from the children. As the exempted portions of the personalty are protected by the equitable trust on the Marengo estate, the trust on the personalty included in that estate, can be reached in equity only, and no statute of limitation runs against the remedy against any part of that trust. How. R. 150 ; 10 Peters, 532, 562-3-4.

C. C. CLAY, contra. A. R. MANNING, submitted the following argument :

I. The word ' presented,' used in the statute of non-claim (as it is called) is of the same origin as the adjective *present*, and imports that the claim shall be had present and (accord-

ing to another section) 'exhibited' to the executor. No waiver of the presentment or act intended as such, is pretended. See Jones' Ex'rs v. Lightfoot, 10 Ala. Rep. 17; Boggs' Ex'rs v. The Bank of Mobile, Ib.; and many other cases.

II. In respect to the trust supposed to be created by the will—

1. By the common law, not only will not language in a will—which in a deed would create an express trust of personal property to pay debts—*not* prevent the statute of limitations from barring, but it is not operative to create such a trust at all. (Nor is it exactly correct to say, that such language is effectual against legatees, distributees, &c. It is operative only as amongst them, and determines what part of an estate, of which each is to have a share, shall bear the burden of the debts.) Heines v. Spruill, 2 Dev. & B. Eq. R. 93, 101; Jones v. Scott, 4 Con. Eng. Ch. Rep. 413; same case in the Ho. of Lords, 4 Clarke & F. 384; Freake v. Cranefeldt, 3 M. & Craig, 500; Evans v. Tweedy, 1 Beavan, 55-7; 3 P. Wm. 89, (reporter's query;) Lewis' Ex'rs v. Bacon, 3 Hen. & Munf. 106. For, chattels are legal assets in the hands of the executor for the payment of all the debts alike, in respect whereof he is suable at law, by the creditors, or any of them. From this responsibility he cannot be released by any provision in the will. Testamentary creditor's liens therefore, (which to be valuable must be positive and exclusive,) would impair the rights of the executor, make the action of the courts of law and equity inharmonious in regard to his powers and liabilities, and render an instrument which, as a will, should depend for effect only on the act of the testator, and the condition of his estate, a contract, to which the assent of the creditors as parties, might sometimes be necessary. Such liens moreover, where in favor of some only of the creditors, would prevent that equal distribution among all which the law prescribes and equity loves, and increase greatly the difficulties of administering estates.

2. In Alabama, lands are also legal assets, in the power of executors, for the payment of all the testator's debts alike. The executor is chargeable for a *devastavit* if he do not have

them sold when necessary. He may have them sold in pre-
ference to slaves. His bond as executor must embrace their
value ; he may rent them out during the whole period of his
administration, and use the proceeds as assets ; and he is sua-
ble at law in respect to the realty. Moreover, the creditor
himself, whether his judgment be obtained before or after
the testator's death, may, by a *scire facias*, in a court of law,
subject the lands to execution. Clay's Dig. 191, § 1; 224,
§ 16 *et seq.*; 197, § 27 ; 199, § 36 ; 195, § 18 ; Fitzpatrick v.
Edgar, 5 Ala. R. 502-3. The liens too, thus created by sta-
tute in favor of creditors, are superior to any interests that
can be created by will, and attach to the lands, no matter to
whom they go, whether to heirs, *&c.* or purchasers from
them. Darrington v. Borland, 3 Porter's Rep. 26, 34 ; Graaf
v. Smith's adm'rs, 1 Dal. Rep. 481; Willard v. Nason, 5
Mass. R. 240. And the lands are no less assets because the
chattels are generally to be first used as such, than the chat-
tels would be because the executor, if his inventory should
show that he had money enough to pay the debts, would
not be permitted to sell slaves for the purpose.

3. The argument from the 10th section of the act concern-
ing wills, (Clay's Dig. 598, § 9,) is in favor of the defend-
ants instead of complainant. For, by the preceding section,
legatees who may happen to be subscribing witnesses to the
will, are deprived of their legacies, in order to make them
competent to testify in its support. Why then should the
very next clause provide that creditors, whose debts are
charged by a will upon the realty, shall be competent wit-
nesses to establish the will, unless the legislature contem-
plated that the provision made for them by that instrument,
was superseded by the similar provision of a charge upon the
land, made for them by the first section of that same act.
To hold otherwise, might enable a creditor who was barred
shortly after the testator's death, to recover by his own tes-
timony, and this when the testator, if he were living, might
perhaps be able to show that the debt was paid.

4. It is not necessary to dispute the authorities cited by
complainant's counsel from England, and from States in
which lands are not made legal assets for the payment of all
of testator's debts alike, and to be administered by the exe-

cutor.   The *dicta* in some of the cases go far beyond the decisions.

In Fenwick v. Chapman, 9 Peters, 468, emancipated slaves, legatees of their own freedom, and of pecuniary bequests, were the suitors, and the court *in favorem libertatis* held, that the real estate must be sold before they should be for the payment of debts.

In Adams v. Breckett, 5 Metc. 280, as in several other cases, the question was between heirs, devisees, &c., and not between them and creditors, claiming as such, to be *cestui que trust* under a will.

In Peter v. Beverly, 10 Peters, 567, the facts made a strong case, very different from the present, and the only statute which affected the question was one of Maryland, which committed it to the discretion of a chancellor, to determine whether the lands descended or devised to minors, should be sold to pay debts of the decedent, and did not make them assets otherwise.

The case of the U. S. Bank v. Beverly, arose out of the same facts.

In the cases of Duval's heirs v. McLosky, 1 Ala. R. and Boardman v. Inge, 2 Ib., the debtors, while living, conveyed the lands by mortgage deeds to the creditors; who, therefore, had the legal estate ; while only equities of redemption remained in the debtors, as their estates therein.

The case of Darrington v. Borland, 3 Por. Rep. 10, the only case directly in point, arose prior to some of our enactments in reference to lands as assets.   And in it, the question, whether such liens as we are considering could be created by will, seems not to have been discussed ; but only whether the words used were sufficient to create one.   It seems to me, that the decision upon this point, in that case, is not law ; and, that specific liens or trusts, in either realty or personalty, in favor of creditors, entitling them as such, to insist upon them, cannot in this State be created by will. See also Man v. Warner, 4 Wheat. 455 ; Smith v. Porter, 1 Binn. 209; Hays v. Jackson, 6 Mass. R. 153.

III.   But if they could be, did the testator in this case intend to create such a trust for the creditors ?   See 2 Jarm. on Wills, 520.

1. A trust is not to be raised by implication, unless it be necessary to carry out the intention. Cook v. Fountain, 3 Swanst. R. 592. Here it is not necessary.

2. The law of a place where a will is to operate, in reference to the subject of it, is as much a part of the will, as if incorporated in writing into it. Hence, in England, a will with a clause like the 5th in Dr. Manning's, would formerly have read thus: By law, my real estate is not, upon my death, chargeable with all my debts; but "I hereby direct and require my executors to keep my estate (partly realty,) in —— county together, until all my debts and legacies are paid," &c. This would very easily bear the construction, that a charge was intended. But a similar will in Alabama would run thus: By law, all my property, real and personal, and effects, are chargeable with my debts; but "I hereby direct and require my executors to keep my estate in —— county together," &c. This would seem to postpone the payment of creditors, (if it could do so,) and shows that the testator was providing, not for them, but for his children, who are afterwards to have this estate.

3. All devises, in regard to the interest of the persons who are to enjoy the estate as devisees, are in the nature of specific devises; and the property which is the subject of them, although there be a general charge of the debts upon it is the very last of the testator's estate to be used to pay the debts. Milnes v. Slater, 8 Ves. 303; Livingston v. Newkirk, 3 J. Ch. R. 312, 322.

4. It is clear from the will, that the testator was only directing the executors in the discharge of their office, for the benefit of his children, and not creating liens in favor of his creditors.

IV. The statute of non-claim constitutes a bar in chancecery, as well as at law, for—1. A legatee is much more a *cestui que trust* under a will, than a creditor can be; and the charge of the legacies and debts upon an estate, are generally, as in this case, made by the same identical words. Yet the former is barred by the statute of limitations in equity, when barred at law, and so must the latter be. Wood v. Wood, et al. 3 Ala. R. 756; Maury's Adm'rs v. Mason's

Adm'rs, 8 Por. 211 ; Kane v. Bloodgood, 7 J. C. R. 90 ; Talbott v. Todd, 5 Dana's R. 199.

2. Much more is the statute of non-claim a bar. This is not a limitation of the time when certain actions at law may be brought. But "all claims" against the estates of deceased persons not presented as it prescribes, are "forever barred from a recovery," in any fourm.   Jones's Ex'rs v. Lightfoot, 10 Ala. Rep. 17 ; Decatur Bank v. Hawkins, 12 Ib. 755. The "estates of deceased persons" are those interests in lands, hereditaments, chattels, &c., and those rights and credits which belonged to, or were of such deceased persons, at the time of their death.   Hence all claims against such estates would embrace even those of a legatee named in the will, or of an heir, so broad is the expression ; and the former is clearly a *cestui que trust.*   But as the legislature did not intend to bar " heirs or legatees, claiming as such," they are specially exempted by the *proviso,* from the operation of the statute.

The act was adopted to compel speedy settlements of estates, so that legatees, devisees and heirs, might soon obtain their several portions, and so that they, and the public who should deal with them, in respect to such portions, might not be deceived, and injured by secret claims of which the only evidence might remain for years unknown, in the pockets or drawers of creditors.   "It is emphatically a statute of repose."   And certainly the sovereign power, which can regulate the descent and distribution of property, upon the death of its owner, and its liability to creditors, has a right to prescribe how long thereafter, and under what circumstances, such liability shall exist.   See Thrash v. Sumwalt, 5 Ala. Rep. 20 ; Gookin v. Sanborn, 3 N. Hamp. Rep. 491 ; Brown v. Anderson, 13 Mass. Rep. 203 ; The Decatur Bank v. Hawkins, *supra.*

COLLIER, C. J.—We do not deem it necessary elaborately to consider the doctrine, that a trust for the benefit of creditors, attaches to a devise of real estate, where the words "after my debts are paid," or other equivalent terms are used by the testator.   This doctrine owes its introduction into

79

British jurisprudence to the exclusion of simple-contract-creditors from the lands of their deceased debtors, as the means of satisfying their demands, and has often been carried to an extent not contemplated by the testators. Treating of this subject, an elementary writer of great respectability says, "it seems to be generally admitted, that the courts have allowed their anxiety to prevent moral injustice, and that men should not sin in their graves, to carry them beyond the limits prescribed by established general principles of construction." 2 Jarm. on Wills, 520. The trust being ascertained, the debts were considered as withdrawn from the influence of the statute of limitations, where the bar was not complete before the testator's death. See the learned judgment of Sir William Plumer, in Burke v. Jones, 2 Ves. & B. Rep. 275, and cases there cited; 2 Story's Eq. § 1245, 1246-7.

It is natural enough that terms not the most significant and direct, should be seized upon to create a trust upon the real estate of a testator for the payment of his debts, where the creditor, according to the law, could not otherwise subject it to liability. There are few men who do not cherish an innate sense of justice, and are pleased to see it accorded to others; no matter how unwilling they may be to render it, where it costs a sacrifice of interest or feeling. Judges are but men, and, with the most honest intentions, sometimes unconsciously yield to the extraneous influences which operate on others. Hence we have no difficulty in accounting for the implication of a trust upon grounds often unwarrantable, in cases analagous in point of fact to the one now before us. But in this State, where all distinction in dignity as it respects the debts of a deceased person, is abolished, and a debt by simple contract is placed on the footing with one which is evidenced by a record, if the latter is not a lien on the debtor's estate, it cannot be expected that the courts should be astute in creating trusts by construction.

According to the common law, if a testator devotes his land to the payment of his debts, without particularizing or distinguishing them, it is regarded but a fair construction of his will, to suppose that he intended to embrace all the debts which were recoverable at the time of his death: But is it

allowable to deduce this inference from the same terms, applied to the same description of property, where by statute it is already charged with the payment of the decedent's estate? Is there not great danger under such a state of the law, of making that which the testator intended as a direction to his executor, when his devisee should be let into the enjoyment of his bounty, a condition precedent to the enjoyment? In England, personal estate in the hands of the executor is a fund for the payment of the debts, and words which would create a trust upon the realty of the testator, will have the effect of modifying the duties of the executor as the personal representative. True, in Jones v. Scott, 1 R. & Mylne's Rep. 255, Lord Brougham decided, in opposition to the master of the rolls, that there was no difference "between a charge upon the real and a charge upon the personal estate." It was admitted that the point had never received a judicial decision, and the Lord Chancellor advised that it should be reconsidered elsewhere. An appeal was accordingly taken to the House of Lords, where, after great consideration, the decree was reversed. Lord Lyndhurst, in pronouncing the opinion of the court, said, "Had it been real estate, in that case the plaintiff would have been entitled to recover, but though part of the personalty, it is said to be taken subject to the trust, and the question is, whether a trust of this description declared of the personal estate, prevents the statute of limitations from being set up by way of defence; and I am clearly of opinion that it does not at all vary the legal liability of the parties, or make any difference with respect to the effect and operation of the statute itself. The executors take the estate subject to the claim of the creditors; they are in point of law the trustees for the creditors; the trust is a legal trust, and there is nothing whatever added to their legal liabilities, from the mere circumstance of the testator himself declaring in express terms, that the estate shall be subject to the payment of his debts. I conceive therefore, that the circumstance of there being an express trust in this case, does not make any alteration with respect to the question. And if in ordinary circumstances as to personalty, where there was a mere legal liability, the existence of a mere legal trust would not have been an answer to a plea

of the statute of limitations; so I conceive, that in the present case, no alteration can take place, from the existence of an express trust, and that that trust cannot, under these circumstances, be considered as an answer to the statute." This opinion was approved by Lord Cottenham, in Freake v. Cranefeldt, 3 Mylne & C's Rep. 500, who said it was a direct authority for holding that a direction in a will for payment of debts, was merely inoperative so far as the personal estate was concerned. See also Crallan v. Oulton, 3 Beav. Rep. 1; Ault v. Goodrich, 4 Russ. Rep. 430; Roosevelt v. Mark, 6 Johns. Ch. Rep. 293; Evans v. Tweedy, 1 Beav. Rep. 55. In Crallan v. Oulton, *ut supra*, the testator directed his debts to be paid out of his real and personal estate, and provided that if his personal estate should fall short in paying his debts his executors should enter into the receipt of the rents of his freehold, until the same should be wholly paid off. The personal estate was sufficient for the payment of the debts; it was nevertheless held, that a trust had been created for the payment of the debts out of the realty so as to prevent the operation of the statute of limitations; and that the real estate remained liable to pay a simple contract debt, which had been left unpaid after distribution of the residuary personal estate.

The cases of Fenwick v. Chapman, 9 Pet. Rep. 461; Peter v. Beverly, 10 Pet. Rep. 562; Bank of the U. S. v. Beverly, et al. 1 How. Rep. 134, we think are in harmony with the English decisions, and perhaps go quite as far in implying a trust for the payment of the testator's debts, and in the consequences deduced from it. See also Lewis's Ex'rs v. Bacon's Legatee and Ex'r, 3 Hen. & M. Rep. 89.

In Hines v. Spruill, et al., 2 Dev. & Bat. Eq. 93, the testator by his will, gave to his two sisters all his land, "together with all cattle, horses, and other appurtenances thereto, except so much thereof as will pay my just and lawful debts, which I think may be done from the crop now growing thereon." He also gave to the same persons all his negroes: Held, that the will did not create a charge upon any part of the property for the benefit of creditors, beyond that

which the law imposes upon the testator's estate; that if the words "except so much thereof as will pay my debts, which I think may be done by my crop growing thereon," create a charge, it is confined to the cattle, horses and other appurtenances mentioned in this clause. These were the subjects immediately anteceding the exception." The fund which the testator trusted would be sufficient, was of the character of appurtenances—the then growing crop. It was also directed by the will, that the negroes should remain on the plantation, until one of his sisters, who is made a legatee, should become of age, at which time he wished the property divided. Upon this provision the court remarked, that creditors could not wait until the sister became of age, "and until that time at least he contemplated that the plantation should continue entire, and the negroes, who were certainly given without any charge, were to remain thereon. It was therefore concluded, that it was not the intention of the testator to *charge* any part of his property *to his creditors*." Speaking of the English decisions on the subject of charging *lands* by will, for the payment of debts, it was said, "In that country lands are not, (or at least were not when these decisions were made,) liable for the payment of the simple contract debts of the deceased. He cannot alter the law and make them directly liable, but having a right to devise his lands, he may devise them either absolutely, or subject to any reasonable condition. When therefore a court of equity collects from a will so executed as to be effectual to pass lands, that the testator devises that his lands shall be subject to the payment of all his just debts, they give effect to this will in the only mode by which it can operate. They hold that it is a devise in trust for the payment of debts—that the lands are by force of the will *charged* with the payment of debts. But we can find no case—no dictum—where, in that country, a testamentary disposition is made of chattels, subject to the payment of debts, that the liability of those chattels *to the creditor* is in the slightest degree affected thereby. The testator can give no chattels but subject to the

payment of debts. All his chattels are immediately liable to his creditors. The chattels do not pass by his gift to the legatee—but they go *first* to the executor, and the law has prescribed their liability, and his liability by reason thereof, to the creditors—and the liability of legatees, if the executor delivers them over, without satisfying or providing for the satisfaction of their demands."

It is enacted, by a statute passed in 1806, that the lands, tenements and hereditaments of the testator or intestate, shall stand chargeable with all the debts of the deceased, over and above what the personal estate shall be sufficient to pay. In 1803, 1818, 1820, and 1822, acts were passed authorizing the sale of the lands belonging to the estate of a deceased person, upon application to the orphans' court, either upon a deficiency of personal property, or where it would be more beneficial to the estate to sell the lands than the slaves, &c. See Wyman, et al. v. Campbell, et al. 6 Port. Rep. 219. It is also provided, that whenever an executor, &c. shall fail to apply to the orphans' court for the sale of real estate, for the purpose of paying debts of the deceased, the judgment creditor may proceed by *scire facias*, and subject the lands to the payment of his demand ; and if an executor, &c., shall fail to apply for leave to sell real estate, three months after reporting the estate insolvent, he shall be deemed guilty of a *devastavit*, and himself and sureties may be sued on his bond. Clay's Dig. 197. So it is made lawful for executors, &c., to rent at public outcry, the real estate of any decedent until he makes a final settlement of his accounts ; and the proceeds shall be assets in his hands. Id. 199. And by a statute subsequent to the testator's death, the orphans' court granting letters testamentary, &c., is required to take into the estimated value of the estate, the real estate of which the testator, &c., may have died siezed or possessed of, and shall require of the executor, &c., a bond with security under such penalty as the law previously required. Id. 229.

These several legislative provisions may suffice to show that lands in this State are subjected to the payment of the

debts of a deceased person, where the personal assets are in-
sufficient, and that in such case it is not only competent for,
but the duty of the executor to take proper measures to make
them available.  It must be conceded that the important
modifications they make in the common law, when connect-
ed with the equalization of debts in point of dignity, should
indispose us to extend the doctrine of implied trusts, such as
we are considering.  We will not deny that it is within the
power of a testator so to provide by will that his real estate
shall be charged beyond what the terms of our statutes di-
rect; though the authorities cited are conclusive to show
that the course of administration in respect to the personalty
cannot be thus controlled.

In Darrington v. Borland, 3 Porter's Rep. 9, two points
material to the present inquiry are determined.  *First*—
That a testator may charge his real estate beyond what it is
charged by the general law.  *Second*—That by postponing
the distribution between his devisees until his debts are paid,
it is so charged.  If the question were now presented to us
for the first time, we should be inclined to think that the in-
tention to extend the charge created by the general law,
could not be inferred from the terms of the will in that case;
and we do not desire to be understood as giving our sanc-
tion to such an interpretation.  Is it at all probable that the
testator in that or the present case intended to withdraw his
debts from the influence of the statutes of *limitation* and
*non-claim*, and allow their payment at any future period,
though his executor had performed and closed his trust, or
wasted the assets which should have been applied to their
extinguishment?  We cannot think that the testator in either
case intended to keep the adjustment of his estate open for
an indefinite period, or that the statutes of *limitation* and
*non-claim* were in any way presented to his mind.

Although the question of these statutory bars was not raised
upon the record in the case last cited, yet the opinion of the
court is expressed as to the effect of the supposed trust upon
them; and it was said that either of them might be success-
fully relied on, by the devisees.  Mr. Justice Story says that
" a general direction in a will of personal estate to pay debts,
will not stop the running of the statute of limitations, or if

the bar has already attached, remove it.   The same rule is
equally applicable to the case of a devise or charge upon real
estate for the payment of debts.   In no case will it take the
case out of the operation of the statute of limitations, or pre-
vent the running of the statute."   Sto. Eq. § 1521, (a) ed. of
1846.   We cite the language of the learned author, though
it must be admitted that the citations he makes from the
English authorities do not sustain the latter part of his pro-
position, viz : *that the trust upon the realty does not prevent
the running of the statute.*   The learned counsel for the
plaintiff in error is mistaken in supposing that Darrington v.
Borland was re-affirmed in Hitchcock's Heirs and Adm'r v.
The U. S. Bank of Penna. 7 Ala. Rep. 386 ; is was merely
cited as to one point, which is not presented in the case at
bar.   We have not denied that it is competent to devise
lands to a trustee for the payment of debts, &c.

The statute of non-claim differs in its effect and conse-
quences from the statute of limitations, technically so called
—it must be insisted on by the personal representative, and
cannot be safely waived.   It requires claims against the es-
tates of deceased persons to be presented to the executor or
administrator within eighteen months, &c.   "and all claims
not so presented within the time aforesaid, shall be forever
barred from a recovery: *Provided,* that the provisions of
this section shall not extend to persons under age, *femes co-
vert,* persons insane or *non compos mentis,* to debts contracted
out of the State, nor to claims of heirs or legatees, claiming
as such."   Clay's Dig. 195, § 17.   This enactment was not
designed merely as a security for the estate against neglected
and dormant claims, but was intended for the benefit of heirs,
distributees and devisees, whom the policy of the law re-
quires should be placed in a condition in which they may
safely act with property apparently their own.   The Br. B'k
at Decatur v. Hawkins, at this term.

It is provided by statute in Massachusetts, that the real es-
tate of a deceased person may be sold by his executor, &c.
when the goods and chattels in his hands shall be insufficient
for the payment of debts with the charges of administering,
upon obtaining a license therefor from either one of several
courts specifically mentioned.   Rev. Stat. of Mass., ed. of

1836, p. 452, *et seq.* In that State, the bond of the execu-
tor stipulates, not only for the proper administration of all
the testator's goods and chattels, rights and credits, but for
the proceeds of all his real estate, that may be sold for the
payment of his debts or legacies, which shall at any time
come to the possession of the executor, or to the possession
of any other person for him. Id. 422. It is also enacted
that " no executor or administrator, after having given notice
of his appointment," &c. " shall be held to answer to the suit
of any creditor of the deceased, unless it be commenced
within four years from the time of his giving bond as afore-
said, excepting in the cases hereinafter mentioned." One of
these exceptions allows, under certain circumstances, an ac-
tion to be brought within one year after an inability to sue,
&c. is removed, although the limitation prescribed has ex-
pired. Under this legislation, a decision altogether pertinent
to the case before us was made in Hall v. Bumstead, 20 Pick.
Rep. 2. *Shaw, C. J.* in delivering the opinion of the court,
said, " In this commonwealth, the liability of heirs for the
debts of an ancestor, depends wholly upon statute, and is
provisional only. By the statute, heirs, when bound at all,
are liable, whether heirs are named in the obligation or not ;
so they are liable as well for debts by simple contract, as for
specialty debts ; so devisees are liable as well as heirs, to the
extent of the property received by devise ; so legatees or dis-
tributees of personal property are liable as well as those who
take a freehold by descent ; in all which respects this stat-
ute liability differs from the liability of heirs at common law.
Here, it is the policy of the law to make all property liable
for all the debts of the deceased owner, and in the first instance,
to place it under the administration of an executor or admin-
istrator ; and in pursuance of the same policy, land is made
assets provisionally in the hands of the administrator, after
the personal property is applied. The rule of the common
law, making the specialty debt of the ancestor *de facto* that
of the heir, and presuming that the heir has assets, until he
shows the contrary by plea, does not prevail in this common-
wealth." *Again:* " Every demand which can be made and
enforced against the estate of a deceased person, is to be pur-

80

sued against the administrator where it can be done, and the whole estate, personal and real, is in effect made assets in his hands to meet such claims. This object is one of great importance, by securing, as far as practicable, an early and final settlement of estates, so that the residuum may be distributed among those entitled, free of incumbrances and charges, which would lead to protracted litigation. To enforce this policy, it is provided that all suits against executors and administrators must be commenced within four years from notice given according to law, and not afterwards. This is an absolute bar, given for the benefit of heirs and devisees, that they may hold their respective interests in the property, without claim or incumbrance." 13 Mass. Rep. 201; 16 Id. 429; 5 Pick. Rep. 140.

Such being the object and policy of the statute of non-claim, we are inclined to think that its effect is to throw upon the creditors the necessity of presenting their demands to the executor, or administrator, before any trust by implication can become operative against the heir or devisee. Have not the legislature very significantly indicated that the heir or devisee shall take the estate freed from all implied trusts for the payment of the testator's debts, if they are not presented to the personal representative within the time prescribed? If this be so, it is an indispensable duty of the courts to sustain— not to defeat the legislative will.

Such is the authority and duty of an executor in respect to the real estate of his testator, that no disposition could be made of it by will, which would withdraw it from liability to pay the testator's debts, if its appropriation should become necessary. If devised, the devisee takes it *cum onere*—subject to the provisional duty and authority of the executor. It may well be questioned whether by any other than express terms, or language most significant and direct, a testator in this State can throw upon his heirs or devisees, the burthen of paying claims, other than those excepted from the influence of the statute, where the creditor omits to present and enforce them against the personal representative.

The construction contended for by the plaintiffs' counsel would make it difficult, if not impossible, for an heir or devisee, or a purchaser from either, where the will, according

to the common law, made the real estate subject to the testator's debts, to act with safety in the sale or improvement of the estates received by them under the will; lest debts of which they had no means of ascertaining, and of which the negligence of the creditor has prevented the payment, should afterwards be enforced. If, in the present case, a trust can be established, it would be hazardous for a testator to give any directions in respect to his land in connection with his debts, if he did not intend to take them out of the course of administration which the legislature has prescribed, or to arrest the operation of the act of limitations, and dispense with the statute of non-claim. Under, perhaps, a majority of wills in this country, the administration would be disturbed—trusts would be created involving responsibilities and consequences which testators never contemplated, and procrastinating to the prejudice of heirs and devisees, the settlement of estates to an indefinite period. The duties of an executor, instead of being controlled by the statutes which apply to the estates of deceased persons, would be regulated by principles recognized by the English chancery, under a state of the law altogether different from ours—and when, too, we have studiously endeavored to avoid the very evils that superinduced them. Our policy is decidedly adverse to the origination of trusts by implication for the payment of debts, not only because it is unnecessary, but because the character of the executor is changed to a mere equitable trustee, not accountable to the orphans' court, and whose default in that character, perhaps his administration bond would not cover. In Cook v. Fountain, 3 Swanst. Ch. Rep. 592, it was said by Lord Chief Justice Raynsford, that "the law never implies, the court never presumes a trust, but in case of absolute necessity. The reason of this rule is sacred; for if the chancery do once take liberty to construe a trust by implication of law, or to presume a trust unnecessarily, a way is opened to the Lord Chancellor to construe or presume any man in England out of his estate; and so at last every case in court will become *casus pro amico.*"

Whatever construction might be placed by an English chancellor upon the different clauses of the will from which it is attempted to deduce a trust, in view of our statute law,

which has effected such important modifications as to the
powers and duties of an executor, they can be regarded as
nothing more than mere directions by the testator as to the
mode of fulfilling his intentions—as an expression of his
wishes, how, and from what portion of his estate, the means
of paying his debts, and some of his legacies, should be raised.
The direction to keep his Marengo estate together, until his
debts, and the legacies he had given, should be "paid off and
discharged," could not operate to the prejudice of his credi-
tors; for if their demands were not extinguished before judg-
ments were recovered, they could coerce a sale.

It is a matter not unworthy of consideration in a proper
case, that in this country, where land is so abundant, it is
much less appreciated than at least one description of per-
sonal property; and as it can be so easily obtained, it is often
most beneficial for a testator's estate, that it should furnish
by a sale the means of paying his debts. Besides, consider-
ations of humanity and benevolence may make it desirable,
and even a duty, to provide for retaining the slaves in his
family. Under such circumstances, would it not be unjust
to raise a trust which would render inoperative the statutes
of *non-claim* and *limitations*, from the mere fact that the
will made the lands primarily liable for the payment of the
testator's debt, when he never could have contemplated such
a consequence.

The cases of Duval's Heirs v. McLoskey, 1 Ala. Rep. 708,
and Inge, et al. v. Boardman, 2 Id. 331, bear no analogy to
the present. There the creditors had specific liens under
mortgages, which invested them with the legal estate. The
lands of the debtors were pledged—the mortgagee had a re-
medy in equity, by which this pledge and lien could be made
available. This remedy did not require a presentment of the
mortgagee's claim to the administrator, to authorize its en-
forcement. If the creditors had looked to any other portion
of their debtor's estate, then it would have been necessary to
have presented their claims to the executor within the time
directed by the statute.

Having determined that the testator did not create a de-
vise by implication for the payment of his debts, so as to ar-
rest the operation of the statutes of *limitations* and *non-claim*

and give to a court of chancery, jurisdiction to subject his real estate to the payment of a debt at the suit of a creditor, it is unnecessary to consider the effect of the allegations in the bill as to the presentation of the complainant's demand. The decisions of this court as to what will constitute a presentment within the meaning of the statute, furnish rules by which, in almost every case that occurs, it may be determined whether the claim has been duly presented to the executor or administrator.    It remains but to add, that the decree of the court of chancery is affirmed.

CHILTON, J.—I concur in affirming the decree of the chancellor, because, the language employed in the will, when construed with respect to the existing law of the land, creates no trust which, under the circumstances of this case, the court of chancery has jurisdiction to enforce.

I do not propose to enter into a discussion in support of the views I entertain, which do not accord with some of the conclusions attained in the opinion of the Chief Justice ; but will content myself by briefly stating them, so that my position may not be misunderstood, should similar questions again come before the court.

By the statute law of this State, "lands stand chargeable with all the debts of the deceased, over and above what the personal estate shall be sufficient to pay," (Digest, 191, § 1,) and the mode is pointed out how a sale is to be effected, in cases where the will does not authorize a sale by the executor.    Ib. 224, § 16, *et seq.*    He may rent the real estate until final settlement.    Ib. 199, § 36.    And unless the executor or administrator apply for leave to sell the real estate within three months after the estate is declared insolvent, he is guilty of a *devastavit.*    Ib. 198, § 27.    County courts may, when the estate would be less injured by a sale of land than of slaves, order the former to be sold.    Ib. 195, § 18.    In the granting of letters testamentary or of administration, the judge of the orphans' court is required to take the land into the estimated value of the estate, and to require bond in double the value of the whole estate.    Digest, 229, § 44. These various enactments, with others which might be referred to, show the design of the legislature in vesting in the

orphans' court plenary powers for the subjecting of real estate to the payment of the debts of the deceased, and that it is the policy of our law to subject the estate, both real and personal, of decedents, to the payment of his debts, in the most summary, expeditious, and least expensive mode which could well be adopted.

At the common law, real estate of deceased persons was not liable to the payment of their simple contract debts, unless such estate was charged by will, and as this provision sometimes operated very harshly, the chancery courts of England, as was said to prevent men's *sinning in their graves*, very eagerly sought and seized upon any expression in a will, in cases where the personal estate was insufficient for the payment of the debts, from which to educe the conclusion, that the testator intended to charge his land with the payment of his debts. Hence these courts, from an early period, endeavored to give effect to a general direction by a testator for the payment of all his debts, by construing it into a trust for their discharge out of his real estate. 1 Roper on Leg. 573; 6 Cruis. Dig. Tit. 31; ch. 16, § 7. Thus commenced a series of judicial decisions which has been continued down to the present time, settling and establishing beyond controversy the English doctrine to be, that a general introductory, or prefatory direction by a testator for the payment of debts, followed by a disposition of his estate *both real and personal*, will, if necessary amount to a trust for the payment of his debts out of the real estate. Troth v. Vernon, Prec. Ch. 430; 2 Vern. 690; Ib. 709; 1 Bro. C. C. 273; 3 Ib. 157; 2 Ves. Jr. 328; 3 Ib. 545; 2 M. & Cr. 695.

But it is said, in such cases the trust is raised by implication only, as being necessarily intended by the testator, and that it may be rebutted if other parts of the will are inconsistent with an intention on the part of the testator to create such a trust. Palmer v. Graves, 1 Keen, 550; Price v. North, Phill. 86; Hill on Trustees, 345. Now the reason, which in my opinion lies at the foundation of this series of English authorities, does not apply in this State, where, as I have shown, such ample provision is made by law for charging the real estate with the payment of all the debts of the

testator, both those which are simple contract debts, and those which are not. It is true, the same doctrine is held by the courts of England, since the statute of 3 and 4 Will. IV., c. 104, which makes freehold and copyhold estates assets for the payment of simple contract debts, &c., but it will be observed, that this statute is confined to those estates which the decedent "shall not by his last will have charged with, *or devised subject to the payment of his debts.*" 12 Sim. 274. Also, Bell v. Harris, 4 M. & Cr. 269. The case of Darrington, et al. v. Borland, 3 Por. Rep. 9, favors the English doctrine, and it is there held, that a will containing these words, "I will that all my just debts should be paid previous to any distribution of my estate," &c., and by a subsequent clause bequeaths all his estate to be equally divided between six devisees, created a trust on behalf of creditors which a court of equity would enforce, notwithstanding the personal estate which had been wasted, was sufficient to have paid the debts. This decision, so far as it respects the construction given by it to the act of 1806, subjecting lands to the payment of debts, no matter how devised, was sanctioned by this court in The Heirs and Adm'r of Hitchcock v. The U. S. Bank of Pen'a, 7 Ala. R. 441, and thus far, it meets my approbation. But that a specific lien upon the land was created by virtue of the will, or that a trust was created by the will which a court of equity will enforce, irrespective of the personal estate made by law primarily liable, does not accord with my view of the law. Why is it that all the courts agree that in the construction of wills the *intention* of the testator is to be the true guide, and yet that intention is so often thwarted, by raising implied trusts, which were evidently never contemplated by the testator? Now in respect to the terms, "*rents* and *profits*," these words are often, by a strained, technical, artificial construction, extended quite beyond any meaning which the testator intended them to have, and to raise a sum by "rents and profits," is held the same as raising it by sale. 1 Ch. Cases, 173; 2 Ib. 205; 1 P. Wms. 415; 1 Atk. Rep. 505; 6 Johns. Ch. Rep. 70; 1 Ves. 41. And yet Lord Hardwick observed, that there was not one case in ten where the court had decreed a sale on the words rents and profits, that it had been agreeable to the testator's

intention. I do not wish to be understood as holding that there may not be cases where, it being impossible to carry out the intention of the testator, the court may effect as near as may be, the end, by a resort to other means than those contemplated in the will; but the principle for which I contend, and which applies to this case is, that *the court of chancery should never imply a trust in the absence of all necessity, and merely for the purpose of attaching jurisdiction.* 2 Story's Eq. § 1195. This would be the effect of such implication in the present case. The personal estate is amply sufficient for the payment of the debts—this estate is made by the law first liable to their satisfaction, unless the orphans' court shall deem it more for the benefit of the estate to sell the lands. The mode pointed out by the statutes for the appropriation of the estate to the payment of the debts is plain and expeditious. Now is it reasonable to conclude from the general expressions used in this will in regard to the payment of debts, that the testator intended to withdraw his real estate without the pale of the law, and the guards which are by law thrown around it? That he intended to waive for his estate the statutes of limitation and of non-claim, (for in my opinion, if a trust is created, such as the will assumes, both are waived,) and to make his executor a special trustee? Does it not better accord with the established rules of interpretation, which require that the intention of the testator, to be gathered from the whole will, should be carried out, to conclude, that these general expressions relied upon by the plaintiff in error to raise a trust, were but recognitions of the law as it existed, and to the requisitions of which, as it respects the charging of lands for the payment of debts on failure of personal assets, the will must give place, regardless of its provisions? But I am departing from my design, which was merely to state my conclusions. In my opinion, it is competent for a testator to charge his real estate with the payment of debts by express provisions in his will, and that a court of chancery will enforce the lien thus created, if it can be done without a violation of the law, in behalf of creditors. That in the en-

forcement of such trusts in equity, neither the statute of limitations, which had not perfected a bar when the trust attached, nor the statute of non-claim, can be available as a defence to the trustee; and that although, in a proper case, a trust may be raised by implication, still this should never be done in the absence of all necessity, and in cases where the law more effectually carries out the object to be accomplished.

I confess, that upon the argument of this cause, my mind was strongly inclined to yield to the weight of the English authorities, which have been followed in many of the States, but upon more thorough investigation, I am satisfied they are opposed to the spirit and policy of our statutes, and the proper and expeditious administration of estates, and that the reason which in my judgment lies at their source no longer exists.