# Steele *et al. v.* Steele's Adm'r.

*Bill in Equity by Administrator cum test. ann, for Marshalling Assets, and Settlement of Estate.*

1. *Contracts of executor or trustee; liability of estate for.*—An executor, or other trustee, can not create any charge against the estate in his hands, enforceable at the suit of the creditor, or person with whom he contracts, without express power and authority to do so : his contracts create only a personal liability, though his creditor may, after suing him to insolvency, have a remedy to reach and subject any indebtedness to him on the part of the estate.

2. *Same, under act of April 8, 1873.*—The act approved April 8, 1873, giving a remedy against a trust estate for labor or services rendered for it at the instance of the trustee (Code, § 3747), has no retroactive operation : it is not within the power of the legislature to create a legal liability out of a past transaction, for which no liability or remedy existed at the time of its occurrence.

3. *Statute of limitations; computation of time under.*—In the computation of time under the statute of limitations, when pleaded by the personal representative or heirs of a deceased debtor, six months after the grant of letters, during which the personal representative can not be sued (Code, § 2614), must be deducted ; and where the debt or claim matured before the late war, the period

[Steele et al. v. Steele's Adm'r.]

during which the statute was thereby suspended must also be deducted, being four years, eight months, and ten days.

4. *Same; partial payment.*—A partial payment on a debt, made before the statutory bar is complete (Code, § 3240), obliterates the time then past, and fixes a new date from which the time is to be computed.

5. *Renewal of note by executor or administrator.*—The case of *Brown v. Lang*, 4 Ala. 50, discussed, as to the renewal of the testator's or intestate's note by an executor or administrator, and other authorities on the point cited ; the court adding, " We do not wish to be understood as re-affirming the doctrine declared in that case—that the giving of a new note by the personal representative extinguishes the debt of the estate."

6. *Power of executor or administrator over property, real or personal; pleading statute of limitations.*—The absolute title to the personal assets and *choses* in action vests in the personal representative, though not in his own right ; and as to them, he may revive a debt by a promise or partial payment, and is not guilty of a *devastavit* by failing to plead the statute of limitations, unless it be in a case of collusion or bad faith. But the title to the real estate descends at once to the heirs, or devisees, subject to the exercise of certain express powers with which the personal representative is clothed by statute ; and, except by the exercise of these statutory powers, in the mode prescribed, no admission or act of his can bind them, or create a charge on the real estate : a judgment against him is, as to them, *res inter alios acta;* and when an attempt is made to subject the lands to its payment, they may plead the statute of limitations, or interpose any other defense which the testator or intestate, if living, might have made.

7. *Testamentary power to sell lands for payment of debts ; when held to create trust.*—In this State, lands being charged by statute with the payment of debts, a mere power to sell lands for the payment of debts, conferred by the will on the personal representative, does not create a trust or charge on the lands in favor of creditors, nor take the debts out of the statute of limitations : to have that effect, the will must show clearly an intention to create such a trust ; and when it is created, the debts are taken out of the operation of the statute of limitations.

8. *Election by widow, between statutory rights and testamentary provision.*—A widow, for whom provision is made by the will of her deceased husband, has a right to dissent from the will, and claim, instead of the testamentary provision, her dower in the lands, and her distributive portion of the personalty (Code, §§ 2292–93); but such dissent must be made in writing, and within one year from the probate of the will ; and although she may not be concluded by an election made unadvisedly, or in ignorance of facts calculated to influence her choice, she can not treat such election as a nullity, nor avoid it, except upon the restoration of what she has received under it.

9. *Widow's rights as against creditors, legatees, and devisees.*—The widow's right of dower is superior to the claims of creditors, devisees, or legatees ; but, when she elects to accept the testamentary provision made for her in lieu of dower, and it becomes necessary to sell lands for the payment of debts, her rights must yield to the claim of creditors, though superior to that of legatees or devisees.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. R. S. WATKINS.

The bill in this case was filed on the 29th November, 1869, by Milton Humes, as the administrator *de bonis non* of the estate of George Steele, deceased, with the will annexed, against the widow and heirs of the said decedent, who were also the devisees under his will, and against numerous persons claiming to be creditors; for the purpose of marshalling the assets of the estate, determining the respective rights and claims of the various parties in interest, enjoining ac-

tions at law, and having the estate settled and distributed under the decree of the court. The testator died in said county of Madison, where he resided, in November, 1855; and his last will and testament was there duly admitted to probate, and letters testamentary granted to M. W. Steele as executor, on the 29th November, 1855. The material portions of the will are copied in the opinion of the court. The executor kept the estate together, cultivating the land, employing. the slaves, supporting the family, etc., as stated more particularly in the opinion of the court, and continued to discharge the duties of the trust until the 21st April, 1869, when he resigned; and letters of administration with the will annexed were granted to Humes on the 31st May, 1869. A temporary injunction was granted on the filing of the bill, restraining legal proceedings by any of the creditors; and each of them propounded his claim by petition or answer, and made proof as to its correctness. A decree *pro confesso* was taken against the executor; and on a statement of his accounts by the register, under an order of reference, a balance was found against him, in favor of the estate. A joint and several answer was filed by the widow and devisees, pleading the statute of limitations as to several of the claims of creditors, insisting that others were extinguished, and others again contracted by the executor without authority; as shown more particularly in the opinion of the court, and in the briefs of counsel.

Pending the suit, a petition was filed by the widow, by leave of the court, claiming dower in the lands; but the chancellor held, on final hearing, that she was barred from claiming dower, not having formally dissented from the will as required by the statute, and having held possession of the property devised to her by the will. He further held, on final hearing on pleadings and proof, that the debts due to Weeden, as trustee of Timmons, to Holding, to Mastin, and to Moore, being debts originally contracted by the testator, were neither extinguished by the transactions with the executor, nor barred by the statute of limitations, and were valid charges against the entire estate, the property not specifically devised being first exhausted; and that the claims of Donegan, Blunt, and others, debts contracted by the executor, while keeping the estate together and carrying on the business, were also valid charges on the property, but must be postponed to the other debts above mentioned. From this decree the widow and devisees appeal, and here assign as error the allowance of the claims of creditors, and of each separately; and Mrs. Steele separately assigns as error the overruling and refusal of her claim for dower. The creditors of the second class, those

claiming under contracts with the executor, also appeal, and assign as error, severally, each for himself, the postponement of his claim to the debts of the first class.

ROBINSON & WALKER, with D. P. LEWIS, and D. CLOPTON, for the widow and children.—I. As to the widow's claim of dower, it is submitted : 1. A devise or bequest to the widow is presumed to be in lieu of dower, unless it clearly appears to have been given in addition to dower.—*McLeod v. McDowell*, 6 Ala. 236 ; *Vaughan v. Vaughan*, 30 Ala. 329. She can accept or reject it, at her pleasure. If she accepts it, she thereby relinquishes her dower ; and this relinquishment forms a valuable consideration for the devise or bequest, and makes her a purchaser for value of the property so bequeathed or devised.—1 Lead. Cas. Eq. 320 ; *Pollard v. Pollard*, 1 Allen, Mass. 490 ; *Isenhart v. Brown*, 1 Edw. Ch. 411-13 ; *Williamson v. Williamson*, 6 Paige, 298 ; *Loocock v. Clarkson*, 1 Denio, 471 ; *Hall's case*, 1 Bland's Ch. 203 ; 2 Scribner on Dower, 496 ; Ambler, 244; *Gaw v. Huffman*, 12 Gratt. 628. All the authorities hold that, if the property devised or bequeathed to the widow can be subjected at all to debts, it is only after the undevised property and the other legacies have been exhausted.—2 Scribner, 496, and cases cited ; *Hubbard v. Hubbard*, 6 Metc. Mass. 50 ; 1 L. C. in Eq. 320. If the property devised in lieu of dower can be made liable at all for debts, it can only be for the debts of the testator in existence when the widow takes the property devised. In this case, nearly all of the debts were created after the widow had accepted the provision made for her by the will ; and her property can not be subjected to their payment.

2. If any part of the debts can be charged on her property, she ought to be allowed now to claim dower. When she elected to take the provision made for her by the will, the estate was entirely solvent; most of the debts now claimed had no existence, and she had every reason to suppose that the property devised to her was free from all claims or demands. Her election, made under these circumstances, does not bind her.—2 Scribner, 488-90, 468 ; 1 L. C. in Eq. 302, 321; *Hall v. Hall*, 2 McCord's Ch. 269-80 ; *Anderson's appeal*, 36 Penn. St. 476 ; *Pinckney v. Pinckney*, 2 Rich. Eq. 219 ; *Snelgrove v. Snelgrove*, 4 Dess. 274; *Adsit v. Adsit*, 2 John. Ch. 448 ; *Adams v. Adams*, 39 Ala. 274; 12 Vesey, 136-53 ; 14 Gratt. 540 ; Redf. Wills, 748, 754; 4 Kent's Com. 57-8, notes ; 1 Roper H. & W. 602. If the widow elects to take under the will, and it turns out that after all nothing passes to her by it, the election is without consideration, as well as made under a misapprehension of facts, and she may

[Steele et al. v. Steele's Adm'r.]

still have her dower.—1 Bishop on Mar. Women, §§ 441, 443; Hone v. Van Schaick, 7 Paige, 221 ; S. C., 20 Wendell, 564 ; Gist v. Cattell, 2 Dess. 53 ; 2 Scribner, 408-9 ; Thompson v. Egbert, 2 Harr. N. J. 459 ; Hall v. Hall, 2 McCord's Ch. 280 ; 1 Hilliard on Real Property, 197, § 68.

II. The claims set up against the estate are of three classes : 1st, debts contracted by the testator himself, for which the creditors hold his original obligation ; 2d, debts contracted by the testator himself, but for which the creditors, in exchange, substitution, or renewal of his obligations, have accepted the obligations of the executor ; 3d, debts not in existence at the death of the testator, but contracted originally by the executor. 1. The debts of the first class embrace the claims of Weeden, as trustee of Timmons, Holding, and Mastin. As to the claims of Weeden, the due bill and bond are both barred by the statute of limitations, unless the payments made by the executor prevented or removed the bar. But, as respects the liability of the lands for debts, and the rights of the heirs or devisees, no act or admission of the personal representative can have any effect ; though he may bind the personal assets, and may pay a debt barred by the statute of limitations.—Leavens v. Butler, 8 Porter, 380 ; 4 Ala. 679 ; Hall v. Darrington, 9 Ala. 502 ; Townes v. Ferguson, 20 Ala. 147 ; Chighizola v. LeBaron, 21 Ala. 406 ; Pollard v. Scears, 28 Ala. 484 ; Anderson v. McGowan, 42 Ala. 280 ; Bond v. Smith, 2 Ala. 660 ; Mooers v. White, 6 John. Ch. 360 ; Peck v. Wheaton, Mart. & Yer. 361 ; 1 Yerger, 10, 288 ; 3 Porter, 38 ; State Bank v. Ellis, 30 Ala. 478 ; McGuire v. Shelby, 20 Ala. 456 ; Reed v. Minell & Co., 30 Ala. 61. The same authorities apply to the claim of Mastin. The claim of Holding is not barred, without regard to the payments made by the executor ; and is a valid claim, unless the fact that personal assets, more than sufficient to pay all the debts, went into the hands of the executor, is a good defense to the heirs and devisees.

2. The second class embraces the claim of Samuel H. Moore ; as to which it is insisted that, under the facts shown by the record, the original debt of the testator is discharged and extinguished, and the personal liability of the executor substituted.—Brown v. Lang, 4 Ala. 50 ; Kellogg v. Richards, 14 Wendell, 116 ; Woods v. Ridley, 27 Miss. 119-48 ; Sims v. Stilwell, 2 How. Miss. 181. If the original debt of the testator is not extinguished by the transactions had with the executor, it is barred by the statute of limitations.—Authorities cited supra.

3. As to the debts of the third class, it is insisted that persons dealing with the executor, like those dealing with any other trustee, must look to him personally, and have no rem-

[Steele et al. v. Steele's Adm'r.]

edy against the estate.—*McEldery v. McKenzie*, 2 Porter, 36 ; *Johnson v. Gaines*, 8 Ala. 791 ; *Kirkman, Abernathy & Hanna v. Benham*, 28 Ala. 501 ; *Davis v. French*, 2 App. 31 ; 3 Mees. & W. 350 ; *Sims v. Stilwell*, 3 How. Miss. 176 ; *Woods v. Ridley*, 27 Miss. 119 ; *Colvin v. Owen*, 22 Ala. 782 ; *Montgomery v. Armstrong*, 5 J. J. Mar. 175 ; 2 Williams on Executors, 1463-4, 1508. If an executor, or other trustee, incurs necessary expenses in the execution of his trust, he will be allowed a credit for them on settlement of his accounts ; but the creditors have no remedy against the trust estate, except where the trustee is insolvent, and has an equitable claim against the estate ; in which case, they may reach and subject such equitable demand to the satisfaction of their claims.—*Jones v. Dawson*, 19 Ala. 695 ; *Brown v. Lang*, 4 Ala. 54 ; *Savage v. Benham*, 11 Ala. 49 ; *Kirkman v. Benham*, 28 Ala. 501 ; *Lyon v. Hays*, 30 Ala. 430 ; *Marshall v. Williams*, 32 Ala. 489 ; 8 Vesey, 48 ; 1 Hare, 577 ; *Wade v. Pope*, 44 Ala. 690 ; *Pollard v. Cleaveland*, 43 Ala. 102 ; Hill on Trustees, m. p. 379, note. A testator may confer on his executor power to contract debts, and to bind the estate for their payment ; but such power must be conferred in clear and express terms, and the power must be confined within the limits prescribed. *Kirkman v. Benham*, 28 Ala. 502 ; *Ward v. Harrington*, 39 Miss. 246 ; 7 How. Miss. 154. Where an executor is authorized to carry on a particular business, he must confine himself strictly to the business designated, and has no authority to enlarge it.—Perry on Trusts, § 810 ; Hill on Trustees, m. p. 379, note ; *McNeill v. Acton*, 2 Eq. R. 21 ; *Kirkman v. Boothe*, 11 Beavan, 273 ; *Banister v. McKenzie*, 6 Munf. 447 ; *Ackerman v. Bennett*, 4 Barbour, 626 ; *Greenwood v. Wakeford*, 1 Beav. 576 ; *Payne v. Collier*, 1 Vesey, 170 ; *Cutbush v. Cutbush*, 1 Beavan, 184 ; *Hill v. Simpson*, 7 Vesey, 152-69. An executor or administrator can not, without express authority, charge the estate with valuable improvements erected on the lands. *Cannon v. Copeland*, 43 Ala. 454. These authorities apply to all the claims arising from contracts made with the executor. The statute (Code, § 3747) can not be invoked by these creditors, because it has no retroactive operation.—38 Ala. 512 ; 7 Johns. 477 ; 19 Ill. 227.

CABANISS & WARD, for Donegan and others, creditors by contract with the executor. (No brief on file.)

BRANDON & JONES, for Holding, a creditor.—1. By the laws of Alabama, the entire estate of a decedent, both real and personal, is made subject to the payment of his debts.—Code, § 2429. The provisions of the will in this case, as to keeping

[Steele et al. v. Steele's Adm'r.]

the estate together, and carrying on the business, are but an expression of the testator's wish as to the manner in which his debts should be paid, and from what portion of his estate the means of payment should be raised. These provisions were intended for the benefit of the devisees, who were the testator's wife and children; and they cannot operate to the prejudice of his creditors, nor postpone the payment of their debts.—Perry on Trusts, 508, §§ 558-9; *Carrington v. Manning*, 13 Ala. 611; *Bull's Executor's v. Bull's Creditors*, 8 B. Monroe, 332.

2. A trust estate is not liable for debts contracted by the trustee; and executors or administrators can not, by virtue of their general powers, bind the estate by their contracts. If they contract for necessary matters, relating to the execution of their trusts, they are individually liable, and judgment and execution must be against them personally.—*Greening v. Sheffield*, Minor, 276; *McEldery v. McKenzie*, 2 Porter, 33; *Johnson v. Gaines*, 8 Ala. 791; *Jones v. Dawson*, 19 Ala. 672; *Kirkman v. Benham*, 28 Ala. 501. Any balance due to the executor or administrator, from the estate, may be reached by such creditors, and subjected to the payment of their debts, when he is insolvent; but, if no such balance exists, they cannot charge the estate.—*Jones v. Dawson*, 19 Ala. 672; *Colvin v. Owens*, 22 Ala. 782; *Savage v. Benham*, 11 Ala. 49; *Lyon v. Hays*, 30 Ala. 430. Where the testator directs his trade to be carried on, the creditors of the trade can look only, 1st, to the personal responsibility of the executor with whom they deal; and, 2d, to the particular property or estate embarked in the trade.—*Ex parte Garland*, 10 Vesey, 110.

3. The statute approved April 8th, 1873 (Code, § 3747), does not apply to these debts, which were contracted by the executor before its passage, and were only his personal contracts. The law does not purport to be retrospective, and to give it a retroactive operation would render it unconstitutional: it would not be giving a new remedy for an existing liability, but creating a liability where none before existed, which the legislature has no power to do.—Cooley on Const. Lim. 369; *Dash v. Van Kleek*, 7 Johns. 477; *Ala. Life Ins. & Trust Co. v. Boykin*, 38 Ala. 510; *McDaniel v. Correll*, 19 Ill. 226; *Greenough v. Greenough*, 11 Penn. 489; *McCabe v. Emerson*, 18 Penn. 111; *Calder v. Bull*, 3 Dallas, 386; *Medford v. Larned*, 16 Mass. 215; Broome's Legal Maxims, 35.

4. The widow forfeited her right to dower, by failing to dissent from the will within twelve months. The statute is mandatory.—Code, § 2293; *Adams v. Adams*, 39 Ala. 278; *Green v. Green*, 7 Porter, 19; *Hilliard v. Binford*, 10 Ala. 977; *Vaughan v. Vaughan*, 30 Ala. 329; *Reaves v. Garrett*, 34 Ala.

558; *Hall v. Hall*, 2 McCord's Ch. 269-80; *Adsit v. Adsit*, 2 John Ch. 448; *Wake v. Wake*, 1 Vesey, 335; *McLeod v. Mc-Dowell*, 6 Ala. 236; 2 Story's Equity, § 1098. If she could be allowed to make an election at this late day, it would only be on the restoration of all she has received under the will. *Wake v. Wake*, 1 Vesey, 335; *Stark v. Hunton*, 1 Saxton's Ch. 216-27; *Reaves v. Garrett*, 34 Ala. 548; *Leonard v. Crommelin*, 1 Edw. Ch. 206; *Upshaw v. Upshaw*, 2 H. & M. 381-92; *Cauffman v. Cauffman*, 17 S. & R. 17-25; *Adams v. Adams*, 39 Ala. 280; *Dillon v. Parker*, 1 Swans.

L. P. WALKER, for Weeden, trustee of Timmons, and Moore, creditors by contract with the testator; and for MASTIN, BRADLEY & LOWRY, creditors by contract with the executor.—1. There can be no serious controversy as to the claim of Weeden, because it is based on the notes of the testator himself. Moore's claim also originated in a debt of the testator, for which his bill of exchange was given; and the executor made various renewals of this debt, by giving his bills of exchange as executor. That these renewals did not amount to an extinguishment of the debt, nor discharge the testator's estate, see *Taylor v. Perry*, 48 Ala. 240; *Boyd v. Beck*, 29 Ala. 703; *Peter v. Beverly*, 10 Peters. The general principle is, that taking a promissory note for a debt is not a payment or extinguishment of the debt, unless so intended and received at the time; and if the note is not paid at maturity, the original cause of action revives.— *Wright v. Union Crockery Ware Co.*, 1 N. H. 281; *Elliott v. Steeper*, 2 N. H. 525; *Jaffries v. Cornish*, 10 N. H. 505; *Thompson v. Briggs*, 10 Foster, N. H. 40; Story on Prom. Notes, §§ 104, 404, 408; *Buckhalter v. Second National Bank*, 42 N. Y. 538.

2. The claim of Mastin, Bradley & Lowry depends upon the construction of the testator's will, as to the powers conferred on the executor. The proof shows that the testator was an extensive builder in brick-work and wood, and owned many valuable mechanics, who could not be otherwise profitably employed; that he authorized his executor to continue to carry on this business, for the benefit of his estate, the support of his family, and the payment of his debts; and that this debt was contracted by the executor, on the credit of the estate, for the purchase of lumber used in the prosecution of the business. On these facts, although the executor was personally liable, the estate also is liable for this debt,—2 Lomax on Executors, m. p. 284; *Ex parte Richardson*, 3 Madd. Ch. 138; *Cutbush v. Cutbush*, 1 Beavan, 185; *Ex parte Garland*, 10 Vesey, 119. As these debts were contracted with the knowledge of the family, who were supported, to a great ex-

[Steele et al. v. Steele's Adm'r.]

tent, out of the profits of the business carried on by the executor, they are estopped from objecting; to their validity as debts against the estate.

3. The chancellor did not err in dismissing the petition for dower.—*Adams v. Adams,* 39 Ala. 280 ; *Vaughan v. Vaughan,* 30 Ala. 329 ; 2 Scribner on Dower, 468 ; *Leonard v. Crommelin,* 1 Edw. Ch. 206 ; *Thelluson v. Woodford,* 13 Vesey, 220 ; *Moore v. Butler,* 2 Sch. & Lef. 267 ; *Spofford v. Manning,* 6 Paige, 383 ; *McGrath v. McGrath,* 38 Ala. 246.

WATTS & SONS, for Moore, a creditor, on application for rehearing.—The main question of the case is, whether the testator's will creates a trust in favor of his creditors. If it does, the debts were not extinguished by the renewals of the executor, nor are they barred by the statute of limitations, since the bar was not complete when the bill was filed, computing the time from the last payment by the executor. A partial payment by an executor or administrator, before the statutory bar is complete, prevents the bar, so far as all the personal assets are concerned, but has no such effect so far as the lands are concerned, or the rights of the heirs or devisees; because he has no power over the lands, except the statutory power to sell under an order of the court. But this principle has no application, where the will gives the executor power to sell the real estate for the payment of debts. The will, in this case, contains an express direction to keep the estate together until the debts are paid ; and then immediately follows an express authority to the executor to sell any of the property, real or personal, except that which is specifically disposed of ; that is, to sell for the payment of debts, and to sell the property particularly specified and named. Having such a power under the will, the executor could not obtain an order of sale from the Probate Court, for the payment of debts.—Code, § 2447 ; *Ala. Conference M. E. Church v. Price,* 42 Ala. 49 ; *McCollum v. McCollum,* 33 Ala. 711. The testamentary power supersedes the statutory power, and gives the executor greater power over the real estate than the statute gives him over the personal estate, which he cannot sell without an order of court. Such a power, many of the authorities hold, cuts off the descent to the heir, and vests an interest in trust in the executor.—8 Barr, 417; 64 Penn. St. 330; 12 Penn. St. 72. Although it may not, under the decisions of this court (*Patton v. Crow,* 26 Ala. 426), cut off the descent to the heir ; yet it creates an express trust in favor of creditors, which a court of equity will enforce.—Hill on Trustees, 506 ; 2 Jarman on Wills, 587-8 ; 2 Story's Equity, §§ 1246-47, and cases cited in notes ; *Peter v. Beverly,* 10 Peters, 532 ; *U. S. Bank v. Bev-*

[Steele et al. v. Steele's Adm'r.]

*erly*, 1 Howard, 134 ; *Robards v. Wortham*, 2 Dev. Eq. 179 ;
*Shreeve v. Joyce*, 36 N. J. Law, 7 Vroom, 55 ; *Starke v. Hunton*,
2 Green's Ch. 300 ; *Warden v. Richards*, 11 Gray, 277 ; *Wood
v. Sparks*, 1 Dev. & Bat. 389 ; *Hunt v. Rousmaniere*, 2 Mason,
250 ; *Davone v. Fanning*, 2 John. Ch. 254 ; *Osgood v. Franklin*,
2 John. Ch. 21 ; *Elliott v. Carter*, 9 Grattan, 541.   The case
of *Peter v. Beverly, supra,* is precisely in point, in which a
trust for creditors was held to be created ; and the briefs of
counsel, in that case, show that the statute of limitations was
relied on as a defense.   In *Carrington v. Manning*, 13 Ala.
611, the bill was not filed to subject the town-lots in Hunts-
ville, Triana, and Florence, as to which a power of sale, for
the payment of debts and legacies, was given to the executor
by the will; but to reach and subject certain lands in Ma-
rengo, as to which no power of sale was given, on the idea of
a trust; and the only question was, whether the will created
a trust in these lands, in favor of creditors.   Nor was the stat-
ute of limitations set up as a defense in that case, though the
statute of non-claim was relied on; which latter statute, un-
like the former, extinguishes the debt.

STONE, J.—George Steele, after duly executing his will,
died in the year 1855.   The will was probated and estab-
lished, and M. W. Steele, the executor therein named, quali-
fied and took upon himself the burden and trust of the estate,
in November, 1855.   The will relieved him from giving bond,
and he gave none.   The clauses of the will necessary to be con-
strued in this case are as follows : " I wish my estate kept to-
gether, till my just debts are paid, if, in the opinion of my
executor, it shall be to the interest of the estate to do so ;
and I hereby empower my executor to sell any property, real
or personal, except such as is hereafter specifically disposed of.
I further wish the brick-building business carried on by my
executor, till the division of the estate.   It is my will that,
until the estate is divided, my wife, Eliza Ann, shall retain
our present residence, and that she and my daughters, Ellen
and Susan, be allowed a liberal and comfortable support out
of the estate ; and Susan's education is to be completed from
the estate.   A liberal allowance must be made my son An-
gelo, if he wishes to study a profession ; or, should he prefer
any other honorable avocation, he must likewise be allowed
a liberal sum out of the estate, until the division of it.   If
my son John F. desires any pecuniary assistance, my execu-
tor must pay him annually, out of the estate, the sum of six
hundred dollars, till the division ; and the same to be charged
against him."   The will then makes special provision for a
nephew of testator's wife, and proceeds :  " When my debts

are paid, my estate must be divided; and when divided, I give and devise to my wife, Eliza Ann, during her natural life, the plantation on which I now reside, known as the 'Oak place,'   .   .   together with the mountain tract of land known as the 'Fagan place';   .   .   also, twenty acres purchased of Jno. Brooks.   :   .   At the death of my wife, the land before described to be equally divided between my heirs at law.   I also give and bequeath to my said wife, absolutely, one-fifth part of the slaves which I may own;   .   .   all the household and kitchen furniture which may belong to me;. also, the carriage and horses, and all the stock and farming utensils necessary to the cultivation of the farm. All the property, real and personal, not specifically disposed of, and not sold by my executor, I give, devise and bequeath to my children, to be equally divided between them; and in making the division equal, the portion which either of my children has received, is to be charged to them respectively, estimating the same at the value charged on my books in my own handwriting, without interest. My son Matthew W. must be allowed the interest on five thousand dollars, from first September, 1850, till division of the estate, in addition to his share general in the estate.   .   .   I wish my executor to collect my claims, and pay off my debts, with all proper speed, and hasten to a division of the estate."

We have probably copied from the will more copiously than will appear to have been necessary; but our object was to show the testator's general intent.   It is shown in the record that the landed interests of the testator were extensive and valuable; and the inventory of the personal estate, with no mention of dues or bills receivable, exceeded seventy thousand dollars.   The executor testifies that the debts of the estate were about forty-five thousand dollars.   Much the largest part of personal assets of the estate consisted of slaves. When the testator died, two of the heirs were minors; the other five were over twenty-one years old.   The executor elected to keep the estate together, and work out the debts, and with it to keep up, not only the brick-building business, but the carpentering, plastering, and painting business, so as to build and finish houses complete.   It is also shown that he enlarged the business, by erecting and fitting up a machine-shop propelled by steam, and by hiring other bricklayers, plasterers, and carpenters, in addition to the large number owned by the estate of his testator.   Save what is stated in the unsworn answer of M. W. Steele, there is an entire absence of averment and proof of what had been the extent of the brick-building business carried on by George Steele in his life-time.   In that answer it is stated, that the

[Steele et al. v. Steele's Adm'r.]

said testator in his life-time did the plastering and stone work, in connection with the brick-building done by him, and that he was in the habit of hiring brick-masons and carpenters to work with his own (he owned and left many); but there is no evidence of the truth of these averments. There neither is averment nor proof that testator in his lifetime had done carpenter's work in connection with his brick-building contracts. We do not say what effect the above averments and proof would have, if made. They are not in the record.

We have stated above that, at the death of Mr. Steele, his estate, as the record tends to show, owed some forty-five thousand dollars. There is attached to the answer of M. W. Steele a statement of solvent dues to the estate, amounting, at Steele's death, to eleven or twelve thousand dollars. The executor sold some real, and some personal property; the amount realized not accurately shown. From his building contracts he realized a gross income of seventy or eighty thousand dollars; but the net income is not shown. He paid part of the debts, and supported the family. His disbursements to the legatees were liberal, if not lavish; being some sixteen thousand dollars to two of them. Of the debts due from the testator, a considerable sum is claimed as unpaid; and many thousands are claimed as due from the estate, for borrowed money, merchandise and other alleged supplies furnished, on contracts and promises made by the executor. The record does not enable us to determine how the executor's accounts with the estate stand. Both the estate, and his administration of it, have, no doubt, been greatly embarrassed and confused by the supervention of the civil war, and the consequent emancipation of the very valuable slave property belonging to the estate.

Very large debts are claimed against the estate, for money lent, merchandise sold, provisions supplied, medicines and medical services furnished, lumber and other building materials, and slaves let to hire; all on contracts and promises made by the executor, after the estate came to his hands. For these claimants it is contended that, under the power and discretion conferred on his executor by the will of Mr. Steele, these claims are a proper charge against the estate. Indeed, it is contended that, being contracted in furtherance of the expressly conferred powers and objects of the will, they are legitimate expenses of administration, and are a first charge on the assets, paramount to the claims of creditors of the estate proper. This argument denies that they stand in the category of debts of the estate; asserts that they were contracted in the conservation of the property, and that they were part and parcel of the necessary expense of keeping the

[Steele et al. v. Steele's Adm'r.]

estate together, and carrying on the brick-building business, until the debts of the estate were paid, as provided by the will.

In *McEldery v. McKenzie*, 2 Por. 33, it was said : " That an executor or administrator can, at his discretion, employ workmen, make contracts, give notes and bonds *ad libitum*, and bind the estate, and, where there are more than one, bind all in that capacity, is a principle that seems only necessary to be stated, to be rejected.   That an executor or administrator may contract for all necessary matters relating to an estate, can not be doubted ; but he does so on his personal responsibility."—See, also, *Greening v. Sheffield*, Min. 276.   In *Lyons v. Hays*, 30 Ala. 430—a suit in chancery—it was said : "One rendering services to a trust estate, under the employment of the trustee, has no redress against the trust, except to subject an equitable demand of the trustee to the payment of the debt."   So, in *Kirkman v. Benham*, 28 Ala. 501—also a chancery suit—it was said : " The bill of exchange mentioned in the pleadings, although signed as drawer by George M. Savage, styling himself executor of Samuel Savage, is the personal contract of Geo. M. Savage, and does not bind the estate he represented.   Kirkman, Abernathy and Hanna were accommodation acceptors, and, as such, have a right to be reimbursed by Geo. M. Savage, the drawer.   This, however, gives them no claim against Samuel Savage.

In *Wade v. Pope*, 44 Ala. 694, the court employs the following language : " Wade charges in his bill that Mrs. Pope, the appellee, was appointed by her husband, at his death, executrix of his will; that the will gave her, as such executrix, power to carry on the farm and manage it, as the husband did in his life-time ; that Mrs. Pope qualified as such executrix, and managed said farm under said will; that her testator's estate consisted of lands, slaves and stock ; that in the year 1856, Mrs. Pope, as executrix, had employed him, said Wade, as overseer on said farm, and had procured him, at her request, to purchase, for the use of said plantation, certain mules at the price of seven hundred and fifty dollars, which mules were used and worked on said plantation, and that they had been retained by executrix as the property of said estate; that appellant had sued Mrs. Pope, not as executrix, but in her individual name, in the Circuit Court of Montgomery county in this State, for his wages, and the price of said mules, in which suit he recovered judgment against her, in April, 1869, for the sum of $1,400 damages, and the further sum of $503.65, costs of suit ; on which judgment, execution had been issued and returned 'no property found.'   This judgment is against Mrs. Pope in her individual capacity, and not

against her as executrix. It is really her debt, and not the debt of the estate she represents; and the plaintiff can not go into chancery, and change it from a liability against her, to one against the estate of her testator. Such is the attempt here, and it is forbidden by the uniform decisions of this court for many years."—*Jones v. Dawson*, 19 Ala. 672; *Mulhall v. Williams*, 32 Ala. 489; *Johnson v. Gaines*, 8 Ala. 791; *Savage v. Benham*, 11 Ala. 49; *Colvin v. Owens*, 22 Ala. 782; *Pollard v. Cleveland*, 43 Ala. 102.

The foregoing is but an affirmance of a principle well nigh universal. In Hill on Trustees, 567 marg., it is said: "The costs, as well as the expenses and charges of trustees, when properly incurred, constitute a charge or lien on the trust estate in their favor; and they will not be compelled to part with the legal estate, until their claim is discharged. But this privilege does not, in general, extend to solicitors, or other persons employed by the trustees; and such persons will be confined to their personal remedy against the trustee, by whom they were employed." In 2 Williams on Executors, 1509, it is said: "A count alleging that the defendant, *as executor*, was indebted to the plaintiff for so much money *lent* by the plaintiff to the defendant *as executor*, and that the defendant, in consideration thereof, *as executor promised to pay*, charges him personally; and he can not plead *plene administravit*, and the only possible judgment is *de bonis propriis*." 2 Lomax Executors, 285 marg.; *Corner v. Shew*, 3 Mees. & Wels. 350; *Kirkman v. Boothe*, 11 Beav. 273; *Hall v. Laver*, 1 Hare, 571; *Fitzhugh v. Fitzhugh*, 11 Gratt. 300; *Montgomery v. Armstrong*, 5 J. J. Marsh. 175; *Sims v. Stilwell*, 3 How. Miss. 176.

The foregoing is the rule. It sometimes works great hardship; but the rule is necessary to save and protect trust estates from mismanagement, and, sometimes, faithlessness of trustees. Persons who deal with trustees, and extend them credit, as a rule, acquire no lien on, or right to proceed against, the trust estate in their hands. It is a matter of personal trust and confidence. True, if the trustee is in advance, and the trust fund is indebted to him, a creditor, after suing the trustee to insolvency, may have a remedy to reach and condemn such trust indebtedness. There are no averments or proofs in this record to raise that question. A trustee can not create a charge on a trust fund, enforceable at the suit of a creditor, without express power and authority therefor. The will of Mr. Steele confers on the executor no power to contract debts.

2. Some of the parties to this suit who hold claims resting on contracts made by M. W. Steele, the executor, invoke the

aid of the act " to authorize the collection of debts for labor and services rendered for the benefit of trust estates," approved April 8, 1873.—Pamph. Acts, 131; Code of 1876, § 3747. The act extends only to debts contracted for *labor* and *services* rendered. This embraces very few of the claims. But the statute does not reach any of the claimants of this class, whose debts were contracted before the passage. We have shown above. that, before the enactment of this statute, these creditors, under the facts shown in this record, had only a personal claim on M. W. Steele, the executor, and no claim whatever to subject the trust effects. It is not within the power of legislation to create a legal liability, out of a past transaction, for which no liability or remedy existed at the time of its occurrence.—*Ala. Life Ins. Co. v. Boykin*, 38 Ala. 510; *Coosa River Steamboat Co. v. Barclay*, 30 Ala. 126; *Sadler v. Langham*, 34 Ala. 329; *Dash v. Van Kleeck*, 7 Johns. 477; *Calder v. Bull*, 3 Dall. 386; *Inhab. Medford v. Learned*, 16 Mass. 215; *Greenough v. Greenough*, 11 Penn. St. 489; *McDaniel v. Carrell*, 19 Ill. 226; *East Kingston v. Towle*, 48 N. H. 57; Cooley Cons. Lim. 369. This question was left open in *Askew v. Myrick*, 54 Ala. 30.

There are cases, in which testators continue their estates, or parts of them, in trade, by express testamentary direction. In such cases, the property or assets thus specially continued in trade, is liable for debts and losses contracted and incurred pursuant to such direction.—*Ex parte Richardson, in re Hodson*, 3 Madd. Rep. 138; *Garland, ex parte*, 10 Vesey, 110; *Cutbush v. Cutbush*, 1 Beav. 184. This principle sheds no light on this case. The creditors, so called, by contract *post mortem*, have no claim against the estate and property of George Steele. The cases of *Cater v. Everleigh*, 4 Dess. 19, and *James v. Mayrant*, 1b. 591, are not in harmony with our decisions, and we decline to follow them.

3. Debts contracted by George Steele in his life-time are a proper charge against his estate, unless they are barred by the statute of limitations, which is pleaded. In computing the time, we must deduct six months after M. W. Steele qualified as executor—November 30th, 1855—under section 2614 of the Code of 1876. We must also deduct four years, eight months, and ten days, during which time the statute was suspended.—*Carter v. Carter*, 53 Ala. 365. These two periods, added together, make five years, two months, and ten days, to be added to the time necessary to perfect the statutory bar. The claims in favor of Holding, James H. Mastin, and Weeden, trustee of Timmons, are bonds, or notes under seal. The time necessary to perfect a bar against these is fifteen years, two months, and ten days, being ten years, *plus* five

years, two months, and ten days.—Code of 1876, § 3225. The bond in favor of Holding fell due July 22, 1855. This claim would not be barred until October 2, 1870. The present bill was filed, and the answer of Holding put in, claiming this demand, long before that time. This is a valid, subsisting claim against the assets of the estate.—*Sterndale v. Hankinson*, 1 Sim. 393.

4. James H. Mastin's claim matured January 2d, 1854. But there is a credit on the bond, of $629.20, of date January 26th, 1855. This was in George Steele's life-time. The entry of credit does not prove the payment was made.—*Acklen's Executor v. Hickman*, 60 Ala. 568. This defect was met by the examination, without objection, of Mastin himself, who proves that the payment was then made, and by George Steele himself. This obliterated the time then past, and constituted January 26th, 1855, a new date from which the time was to be computed.—Code of 1876, § 3240. This computation fixes April 6th, 1870, as the day on which the bar would be complete against this claim. Mr. Mastin's answer was filed, asserting this claim, January 26th, 1870. This is a proper claim against the estate.

The claim of Weeden, trustee, consists of two bonds. The larger one, of $3,816, matured January 1st, 1855. The fifteen years, two months, and ten days expired March 11, 1870; after the bill in this case was filed, and the injunction against suits was issued. This is a valid, subsisting claim.—See *Sterndale v. Hankinson, supra*. The smaller claim of seventy-five dollars was due in 1850, but George Steele made a payment on it, March 8th, 1854. Computing from this date, the bar of the statute against this claim became complete, May 18th, 1869. The present bill was filed, November 29th, 1869. So this claim is barred, unless the payment made by M. W. Steele, executor, of date January, 1857, and the suit brought on the claim against him, January 10th, 1866, take it out of the operation of the statute. The statute is pleaded by the heirs; and it is contended for them, that no promise, or payment, made by the executor, will avail to stop the running of the statute, against any effort made to sell real estate for the payment of such claim. We will consider this question in connection with the claim asserted by Samuel H. Moore; the only remaining claim against the estate covered by the assignments of error.

The claim of Samuel H. Moore is as follows: In August, 1855, George Steele, testator, borrowed money from the guardian of said Samuel H. Moore, and gave bill of exchange, himself as drawer, Fearn, Donegan & Co. acceptors, and Robert Fearn payee and indorser, due at twelve months, to

secure the payment of said loan.    Steele dying before the maturity of the bill, M. W. Steele, the executor, renewed it annually for six consecutive years.    The last renewal bears date July 23d, 1861, and is due at thirteen months—August 23-26th, 1862.    This bill is drawn on, and accepted by Scruggs, Donegan & Co., probably successors to Fearn, Donegan & Co.    All the renewal bills were drawn by, and signed "M. W. Steele, ex'r."    The said executor made a payment March 4th, 1862, for which he obtained a credit on the bill.    On the 16th June, 1869, Moore filed a bill, which was pending when this suit was brought, the object of which was to enforce the collection of his claim out of the assets of George Steele's estate.    There are said to be no personal assets, and the entire estate consists of real property.    Neither the pleadings, testimony, nor arguments of counsel, speak of any personal assets remaining on hand ; and we consider it unnecessary to declare what would be the rule, if there were personal property.

In *Brown v. Lang*, 4 Ala. 50—a case somewhat like the present, except that in that case the surety had paid the debt, and sought to re-establish it against the estate, for his own indemnity—this court treated the taking up of decedent's note, and the giving of a new one by the personal representative, as a *novation*, and ruled that thereby the note ceased to be a debt of the estate, and became the personal debt of the administratrix.    There had been no change of parties to the note in the several renewals, except that, instead of Lang's name, Mrs. Lang, his personal representative, signed with the other makers.    This court held, that the purchase of the second note by the bank relieved the intestate's estate from all liability to pay the debt, and that the complainant was not entitled to the relief sought ; that his only equity, so far as the intestate's estate was concerned, was to subject the interest of the administratrix and surviving partner therein, if any, to the payment of the amount paid as their indorser.    If Fearn, the indorser of the bill in this case, had paid the debt, and he himself, instead of Moore, was seeking to enforce the claim against Steele's estate, the two cases would be precisely parallel.    In that case, it was ruled, that Lang's estate was discharged ; and hence, that there was no liability on the personal assets.    We need not inquire whether that case governs this or not, or whether it is to be followed.—See 1 Brick. Dig. 287, §§ 501-2 ; Story on Prom. Notes, §§ 104, 404 ; *Elliott v. Sleeper*, 2 N. H. 525 ; *Jaffrey v. Cornish*, 10 N. H. 505 ; *Buckhalter v. Second National Bank*, 42 N. Y. 538 ; *Boyd v. Beck*, 29 Ala. 703.

6. The title to the personal assets of a decedent vests in the personal representative, the very moment he is appointed

[Steele et al. v. Steele's Adm'r.]

and qualifies.   He is the owner of them ; but not in his own right.   He holds them in trust, first to pay debts and lawful charges; then, to be divided, or disposed of, as the will, or law of distributions, declares.   To these ends, he not only holds the title, but he exercises a general power over them, limited only by certain declared rules of law.—*Woolfork v. Sullivan*, 23 Ala. 548 ; 1 Brick. Dig. 932, §§ 261 *et seq.; Baldwin v. Hatchett*, 56 Ala. 461; *Hutchinson v. Owen*, 59 Ala. 326. If the personal assets are applied to the payment of debts, it matters not if the collection of those debts could have been defeated by a plea of the statute of limitations. The personal representative is not compellable to plead it; and he is guilty of no *devastavit* in failing to make that defense, unless he be guilty of negligence, act in bad faith, or in collusion, when there is doubt of the justness of the claim.   It would give rise to grave suspicion, if, having cause to distrust the justice of the claim, he failed to interpose such defense to a claim that was barred by lapse of time.—*Teague v. Corbett*, 57 Ala.

But real estate, though made subject to debts by our statutes, in the absence of testamentary direction, stands on a very different footing.   The title is never in abeyance, but on the death of the ancestor descends instantly to the heir or devisee.   True, the personal representative may demand and hold possession, and exercise the statutory power of renting, and even selling it for the payment of debts.   But it is a mere power—a bare authority—and must be executed as the statute directs.—*Chighizola v. Le Baron*, 21 Ala. 406 ; *Martin v. Williams*, 18 Ala. 190.   Until exercised, or steps taken looking to its exercise, the right of the heir is not interrupted. *Masterson v. Girard*, 10 Ala. 60 ; *Br. Bank v. Fry*, 23 Ala. 770 ; *Leavens v. Butler*, 8 Por. 380 ; *Anderson v. McGowan*, 42 Ala. 280 ; 1 Brick. Dig, 939, § 351.   From these premises it results, that the personal representative can do nothing, save as the statutes give him authority, to devest or incumber the title to the realty, which descends to the heir, or devisee.   The statutes have given him no power to do so.   Until he takes possession, sells under a power conferred by the will, or·begins the exercise of some one of the statutory powers, under which he may obtain an order of sale, he has done nothing to which the heir, or devisee, is a party, or by which they can be concluded.   He may revive a debt by partial payment or promise; he may submit to a recovery of judgment.   These are not the acts of the heir, for, in these respects, he is not their representative.   They do not derive their title through him.   All he may do or suffer, as affecting their landed estates, is *res inter alios acta;* and when an effort is made by the personal representative, or another, to intercept the descent,

and appropriate the lands to the payment of the alleged debts of the ancestor, the heirs or devisees for the first time become parties to the record; and they then come into court with all their rights of defense unimpaired. They bring with them the same rights to plead, call for proof, and make defense, as if no litigation had preceded.—*McGuire v. Shelby*, 20 Ala. 456; *Gwynn v. Hamilton*, 29 Ala. 233.

In *Bond's Heirs v. Smith*, 2 Ala. 660, this court said : " It is very clear that the legislature did not contemplate a sale of the lands, as a matter of course, on the application of the executor or administrator, but required him to establish the allegations of his petition by proof, if denied by the heir ; and where the heirs are infants, no admission can be made to dispense with this proof. What, then, is the allegation to be proved ? It is, that the personal estate is not sufficient to pay the just debts of the testator, or intestate. To ascertain this, it is obviously necessary to inquire what debts are binding on the testator or intestate, and consequently a charge on the estate ; and it seems to us that any defense, which the ancestor could have made, if the suit had been brought against him, may be made by the heir. The proceeding is, in effect, a suit by the creditors against the heirs, claiming satisfaction out of the estate which has descended to them, for a debt due from the ancestor. It does not, therefore, rest with the administrator to say whether the bar of the statute of limitations shall be interposed or not; he is placed in an antagonist position to the heir, and can not therefore make any admission which shall prejudice him. His power to meddle with the real estate is derived entirely from the statute ; it is a special authority, derived from the order of the court, on proof of the allegations of the petition, and confers no power further than is necessary to execute the trust, with which he is clothed for the benefit of the creditors. It is true that, while acting in his appropriate sphere, as the representative of the deceased, he may decline to interpose the bar of the statute to defeat a just claim ; but, when he lays down his character of representative of the deceased, and becomes a party litigant on behalf of the creditors, against the heirs, it would be a strange anomaly if he should be allowed to dictate the defense."

In *Teague v. Corbett, supra*, the administrator had suffered judgment to go against him, on a note, which he could have prevented by a plea of the statute of limitations. He paid the judgment, in part, with moneys derived from a sale of intestate's lands, made under an order of court for the payment of debts. The question was, whether he should be allowed such payment as a credit on his final settlement. This court

said: "It is apparent the administrator can not be reimbursed the payment made on this judgment, unless he is allowed to retain from the assets in his hands arising from the sale of the lands of the intestate, made under decree of the Court of Probate. The money for which the lands were sold, as to the heirs, and as to all questions of charge or liability, or of descent or succession, must be regarded as a substitute for the lands.— *Williamson v. Mason*, 23 Ala. 488; *Chaney v. Chaney*, 38 Ala. 35. Between an administrator or executor and the heir or devisee, no relation of privity exists; and the real assets can not be bound by any admission or acknowledgment made by the personal representative. Hence, though the executor or administrator is not bound to plead the statute of limitations, and by omitting to plead it, or by an express promise in writing, may revive a demand the statute bars, and thereby charge the personal assets, no such charge can be created on the real assets. He is the owner of the personal assets as trustee, but the lands descend, if not devised, to the heir; or if devised, pass *eo instanti* the death of the testator, to the devisee; and as to the heirs or devisee, his admissions or acknowledgments are *res inter alios*."

In *Rogers v. Grannis*, 20 Ala. 247, it was decided, that a judgment, rendered against an administrator in chief, did not establish the existence of the debt against the estate in the hands of the administrator *de bonis non*. In Freeman on Judgments, § 163, it is said: "Between the real and personal representatives of a deceased person there is no privity. Hence, a judgment against an administrator or executor is never conclusive against the heirs or devisees, and a judgment for or against an heir or devisee has no effect upon an administrator or executor. A decree against an executor is not binding on the heir, because he is not a party to the suit, can not offer testimony, adduce evidence in opposition to the claim, nor appeal from the judgment. But, as the heirs are not bound by a judgment against the administrator, they are at liberty to dispute any claim so allowed, because the allowance has no higher effect than a judgment. If the allowed claims are made the basis on which to obtain an order to sell the real estate, the heirs are not precluded from contesting them, as freely as though they had acquired none of the properties of a judgment; for, as to the heirs, they are not *res judicata*."

In *Mooers v. White*, 6 Johns. Ch. 353, 387, Chancellor KENT, after an elaborate review of authorities, used the following language: "If, however, we were to admit, that the defendant, W, was still in time to apply for the sale of the real estate; yet, I apprehend, that when the persons interested in the real estate appear before the judge, or surrogate, with their

allegations and proofs, they are entitled to raise the same objections to the creditor's demand, which they might have raised, if they had been regularly sued; and that they may, of course, interpose the statute of limitations. The justice and reasonableness of the proposition are so exceedingly clear, that I can not regard it as susceptible of doubt. The surrogate must be satisfied of the existence of the debts beyond the amount of the personal estate, before he can grant the order for the sale of the real estate. He must adjudge what are *debts*, and the statute must mean *subsisting* debts. If they are barred by the statute, and that be set up as a defense, the conclusion is that they have been paid, and that they do not then subsist. If the heir or purchaser appears, and makes this defense, it is *his* defense; and the executor has no right to interfere, and disturb or waive it." The following authorities are to the same effect: *Baker v. Kingsland*, 10 Paige, 366; *Vernon v. Valk*, 2 Hill's Ch. (So. Car.) 257 . *Riser v. Snoddy*, 7 Ind. 442; *Mason v. Peter*, 1 Munf. 437; *Gilmore v. Tisdale*, 1 Yerg. 285; *Stone v. Wood*, 16 Ill. 177; Rorer Jud. Sales, § 234; *Jennings v. Key*, 5 Ind. 257; *Rogers v. Rogers*, 3 Wend. 503; *Gwynn v. Hamilton*, 29 Ala. 233.

We have thus shown that neither a promise or admission by the personal representative, nor a judgment suffered by him, fixes a lien or liability on the real estate, as against the heir or devisee. As stated by Judge ORMOND, in *Smith v. Bond, supra*, in proceedings to sell lands for the payment of debts, the personal representative represents and is the agent of the creditors. He proceeds in their right, and antagonizes the claim and right of the heir or devisee. If it be contended that the will in this case, in express terms, permitted the estate to be kept together, until the debts were paid, and thus prevented the running of the statute, so long as the executor kept the estate together, and kept the debts alive by renewals; the case of *Carrington v. Manning*, 13 Ala. 611, is a full answer to this position. The will in that case directed that certain lots be " sold, and the proceeds applied to the payment of legacies hereafter bequeathed, and the discharge of my (testator's) debts. I hereby direct and require my executors, hereinafter named, to keep my estate in the county of Marengo, Alabama, together, until all my debts and legacies are paid off and discharged," &c. Testator further expressed his intention that his estate in Marengo should not be divided until all his debts and the legacies were satisfied. It was held that the will did not create a trust by implication in favor of creditors, which would take a debt due by the deceased out of the statute of limitations, or prevent it from

running, or prevent the bar of the statute of non-claim.—See, also, Perry on Trusts, § 559.

We have been referred to *Peter v. Beverly*, 10 Pet. 532, as showing that the renewals made by M. W. Steele, the executor, continued the debt as a charge against the estate and its realty.   That case stands directly opposed to the decision of this court in *Brown v. Lang*, 4 Ala. 50.   This court held the act of renewal to be a novation, and an extinguishment of the claim as a debt of the estate, by the creation of a new personal debt of the administratrix.   The Supreme Court of the United States held a similar act to be but an extension of a subsisting debt against the estate.   Moreover, in the case of *Peter v. Beverly*, the report fails to show there was any plea of the statute of limitations.   If, as the argument of counsel tends to show, length of time was relied on as a bar to recovery, the court did not consider it.   We prefer to rest our decision of this question on the principle stated above, rather than on the case of *Peter v. Beverly*, which is silent on the question of the statute of limitations.

7.  Since the foregoing opinion was prepared, a second argument has been submitted for Samuel H. Moore, in which it is urged that Mr. Steele's will charges his real estate with the payment of his debts, and thus fastens a trust upon it, which intercepts the running of the statute of limitations, and which chancery will enforce.   It is well known that, in England, when governed alone by the common law on the subject, lands descended were not chargeable with simple-contract debts.   Under that principle, the courts, at an early day, seized upon slight, and ofttimes ambiguous testamentary directions, and construed them as fastening a charge and trust on the real estate for the payment of debts.   This, it was sometimes said, to prevent testators from sinning in their graves.   That principle, and the reason of it, can not exist here, to the extent there carried.   In this, and in most of the States composing the Union, lands are charged by statute with the payment of decedents' debts, without reference to their solemnity or dignity, and independent of any testamentary direction therefor.   Hence, we do not consult the will to ascertain whether there is a charge *vel non*.   We only inquire whether the will directs the manner of enforcing the charge. When that is the case, if there be nothing in the directions violative of the law, or the legal rights of others, the will becomes a law for the conduct of the executor and all others who take under it.   It follows that, while, under the common law, courts were astute to discover and interpret doubtful language as raising a trust, we, setting out with the postulate that the law has created a charge, consult the testator's lan-

guage for the sole purpose of ascertaining whether it was his intention to raise that statutory charge to the higher and more valuable right of a trust for the payment of debts. A devise to the executor, or to another, in trust to pay debts, or expressly charged with the payment of debts, would clearly express the testator's intention, and would scarcely leave room for interpretation. Such language would place the property in trust, and would deny to the trustee, or *fide-commissary*, the right to interpose the statute of limitations as a defense to the debt, for the payment of which it was intended to provide. We will not say there may not be created, by implication, a charge and trust on real estate for the payment of debts, without express devise for that purpose; but, to accomplish such result, the language of the will must be such as to satisfy the mind that the testator so intended. In other words, whether there is a charge and trust or not, is a question of interpretation, upon the rules we recognize as applicable to other written instruments. This, we think, is the substance of the very considerate ruling of this court in the case of *Carrington v. Manning*, 13 Ala. 611 ; and in our opinion, the turning points of that case are well and ably sustained, both by argument and authority. Chief-Justice COLLIER suggestively inquired, "Would it not be unjust to raise a trust, which would render inoperative the statutes of *non-claim* and *limitations*, from the mere fact that the will made the lands primarily liable for the payment of the testator's debt, when he never could have contemplated such a result." And Justice CHILTON, after stating the grounds for a departure in this country from the rule in England, himself said, interrogatively: "Is it reasonable to conclude, from the general expressions used in this will in regard to the payment of debts, that the testator intended to withdraw his real estate without the pale of the law, and the guards which are by law thrown around it? that he intended to waive for his estate the statutes of limitation and of non-claim (for, in my opinion, if a trust is created, such as the will [bill?] assumes, both are waived), and to make his executor a special trustee? Does it not better accord with the established rules of interpretation, which require that the intentions of the testator, to be gathered from the whole will, should be carried out, to conclude that these general expressions, relied upon by the plaintiff in error to raise a trust, were but recognitions of the law as it existed, and to the requisitions of which, as it respects the charging of lands for the payment of debts on failure of personal assets, the will must give place, regardless of its provisions?" See a discussion of these questions, in 2 Story's Eq. Jur. § 1244-46.

We think the principle announced above decisive of this case. There is not found in Mr. Steele's will any *express* charge of the debts on his real estate, and there is nothing in its language from which such *implication* arises. Our conclusion is, that the claim of Samuel H. Moore, and the small claim in favor of Weeden, trustee, are barred, and must be disallowed. We do not, however, wish to be understood as reaffirming the doctrine, declared in *Brown v. Lang*, that the giving of a new note by the personal representative extinguishes the debt of the estate.

8. The statute law of this State provides that the widow, for whom provision has been made by the will of her deceased husband, may dissent from such provision, and " take her dower in the lands, and of the personal estate such portion as she would have been entitled to in case of intestacy." Code of 1876, § 2292. " Such dissent must be made in writing, and deposited within one year from the probate of the will," &c.—*Ib.* § 2293. It would seem that the language of this statute is imperative, and, to be availing, the dissent must be deposited within one year after the probate of the will. In *Adams v. Adams*, 39 Ala. 274, 280, it was said: " Although she may have made an election, she is not concluded by it, if made in ignorance of the circumstances calculated to influence her choice. But we are not to infer from the expression, that she 'is not concluded by an election unadvisedly made,' that she can treat her election as a nullity, while she retains all she may have received by virtue of the election. On the contrary, it is manifest justice that she should avoid the election, only upon a restoration of what she has received." This doctrine, general in its expression, is well supported by authority.—*Dillon v. Parker*, 1 Swanst. 359; *Wake v. Wake*, 1 Ves. Jr. 335; *Thellusson v. Woodford*, 13 *Ib.* 209; *Brice v. Brice*, 2 Moll. 2ı; *Cauffman v. Cauffman*, 17 Serg. & R. 16; *Upshaw v. Upshaw*, 2 Hen. & Munf. 381; *Hall v. Hall*, 2 McC. Ch. 269; *Stark v. Hunton*, 1 Saxt. 216; *Leonard v. Crommelin*, 1 Edw. Ch. 206; *Spofford v. Manning*, 6 Paige, 383; *Adsit v. Adsit*, 2 Johns. Ch. 448.

But, if there be an extension of time within which to elect, under an equitable construction of our statute, neither the pleadings nor proofs in the present record justify its exercise. There is no averment, and no attempt at proof, that Mrs. Steele was at any time ignorant of any fact or circumstance, calculated to influence her choice. Neither is it shown, or even possible, that she can, by restoration, place the property of the estate in *statu quo.* More than twenty years ago, she was in possession of the property devised to her by the will, and it is not shown she has ever been disturbed in its enjoy-

ment. It is clear that no adverse claim was asserted during the administration of the executor, which lasted more than thirteen years. She has no right now to dissent from the provisions of the will, and claim dower in the lands of which her husband died seized.—See *Collins v. Carman*, 5 Md. 503.

9. It is contended for Mrs. Steele, that inasmuch as she surrendered her dower and distributive share in her husband's estate, in consideration of the provision, real and personal, made for her in the will, this constitutes her a purchaser for value, and she is entitled to hold, even against creditors, so much of the provision made for her as is the equivalent of her dower. True, the law secured to her right to dower against the claims of creditors, no matter how meritorious ; and a wife's inchoate claim of dower is treated as having such value, that its relinquishment furnishes a sufficient consideration to uphold a promise or conveyance made to her, if not unreasonable in amount or value. In Maryland they have a statute on the subject ; and there it is held, that a widow, who, in consideration of the provision made for her in the will, has failed to dissent and claim dower, stands in the category of a purchaser, and her right under the will is superior to that of creditors.—*Coomes v. Clements*, 4 Har. & Johns. 480 ; *Hall's case*, 1 Bland's Ch. 203 ; *Thomas v. Wood*, 1 Md. Ch. Dec. 296. A similar principle was declared, without a statute, in *Stewart v. Carson*, 1 Dess. 500. On the other hand, a few cases hold that a widow thus circumstanced has no preferences even over other legatees ; but that legatees and devisees must share and abate equally, if the will declare no priorities.—*Brant's Will*, 40 Mo. 266 ; *Chambers v. Davis*, 15 B. Monroe, 522 ; *Perrine v. Perrine*, 1 Halst. 133 ; *Paxson v. Potts*, 2 Greene's Ch. 313. The weight of authorities, however, holds that she is a purchaser, so far as to have a prior right over all other legatees and devisees ; but that her claim must yield to that of creditors. 2 Scribner Dower, 496 ; 1 Leading Cases in Equity, 1 pt. 570 ; *Lord v. Lord*, 23 Conn. 327 ; 1 Rop. Leg. 432 ; *Burredge v. Bradyl*, 1 Pr. Wms. 127 ; *Blower v. Marret*, 2 Ves. Sr. 420 ; *Heath v. Dendy*, 1 Russ. 543 ; *Norcott v. Gordon*, 14 Sim. 258 ; *Williamson v. Williamson*, 6 Paige, 298 ; *Isenhart v. Brown*, 1 Edw. Ch. 411 ; *Pollard v. Pollard*, 1 Allen, 490 ; *Loocock v. Clarkson*, 1 Dess. 471 ; *Hubbard v. Hubbard*, 6 Metc. Mass. 50 ; *Tevis v. McCreary*, 3 Metc. Ky. 151 ; *Gaw v. Huffman*, 12 Grat. 628 ; *Reed v. Reed*, 9 Watts, 263 ; *Daverhill v. Fletcher*, Ambl. 244.

We feel it our duty to follow the principle last stated ; and while Mrs. Steele's claim must be postponed to that of creditors, she has a paramount right over all other devisees and

[Ex parte City Council of Montgomery, in re Knox.]

legatees. Should a sale of the realty become necessary for the payment of debts, all other property of the estate must be sold, before that devised to her is sold.

Reversed and remanded, to be proceeded in according to the principles of this opinion.

BRICKELL, C. J. not sitting, having been of counsel.